(63 App. Div. 423.)

### HEWLETT et al. v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. July 25, 1901.)

1. STREET RAILROADS—NEGLIGENCE—COLLISION—SPEED OF CAR—EVIDENCE—ADMISSIBILITY.

In an action against a street railroad for the death of plaintiff's intestate by a collision between his wagon and a street car, it was plaintiff's theory that the car was running at an excessive rate of speed, and he introduced evidence as to the speed of six or seven cars at the place of the accident some six months after the accident; but it did not appear that the conditions at the time of the observations were in any respect common with those existing at the time of the accident. Held, that it was error to receive the evidence.

2. SAME—DAMAGES—EVIDENCE.

In an action for the death of a market gardener, it was error to receive, on the question of damages, evidence as to the number of times he went to market each week, and how much each load he transported was worth, approximately,—it appearing that he employed a certain number of men, and owned 80 acres of land, etc.,—inasmuch as capital was a factor in the production of the earnings shown.

3. SAME—RIGHTS OF STREET RAILROAD IN STREET—PARAMOUNT RIGHT—CROSSING CUL-DE-SAC.

While a street railroad has a "paramount right of way" in a street, where its rails pass an intersecting street, which is at that point a cul-de-sac, the exercise of such right must be exercised with ordinary prudence, in view of the physical condition of the locality.

Appeal from trial term, Nassau county.

Action by Oliver T. Hewlett and another, as administrators of the estate of Townsend J. Hewlett, deceased, against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiffs, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

John L. Wells, for appellant.
A. N. Weller, for respondents.

JENKS, J.    There are errors in the admission of testimony which require a reversal of this judgment.    The action is to recover damages for the death of plaintiffs' intestate, resultant from a collision between his market wagon and a car of the defendant, operated by it upon its street surface railroad, at Myrtle avenue, in the borough of Queens.    About half after 7 o'clock p. m. on March 2, 1900, the plaintiff drove towards Myrtle avenue from Deboo place, and, while turning into the former street, the car came into collision with the wagon, whereby the said intestate was cast down to his death.    The complaint was that the car came with great speed up behind said wagon, and that the motorman carelessly, negligently, and willfully, and without slacking speed, ran the corner of said car into the wagon rack of the decedent.    There was testimony given by the several witnesses for the plaintiffs that the car traveled very fast or at a high rate of speed.    Thus the plaintiff both pleaded and gave in evidence excessive speed, and a relative lack of due care in control of the car, as an element of the negligence of the defendant.    The plaintiffs called one Thompson, who took certain measurements at the place of the accident on September 18, 1900, about a week previous to the trial.    He was then asked this question:

"Q. Now, did you take the time of the cars coming from the point which he first could view the cars as they were coming up?  Did you take the time of the cars running there on the point up to the corner?  A. Yes, sir;  I took it seven times, I believe.  Q. And how long did it take the cars, running from 200 feet, or from that point where you could see the car—  How long were they running that distance?  (Objection as incompetent, immaterial, and improper.)  The Court: If you are prepared to show that the running time has not been altered, then I will take it.  By the Court: Q. When were these observations that you made?  A. Tuesday, September 18th.  Defendant's Counsel: I object to it on the ground that it is incompetent, irrelevant, and immaterial, and not evidence of the speed of this car on this night when this collision occurred.  (Objection overruled.  Defendant excepts.)  Q. Now, what was the time running between that point where the first observation and where the car could be first seen to the corner?  A. Seven seconds, at the least.  I took the observation seven times,—six or seven,—and the lowest was seven seconds.  The average was from seven to twelve seconds."

Motion was made to strike out this testimony, which was denied under exception.    Proof that six or seven different cars ran a certain distance in respective periods varying from 7 to 12 seconds, in a certain part of September 18, 1900, is not competent evidence of the speed of a car over the same distance on March 2, 1900.    The proof given shows that the cars on September 18th, and within, presumably, a short period of that, one day varied from 7 to 12 seconds, and that therefore, even within that short space of time, there was no uniformity of speed.    It did not even appear that the conditions on March 2d and September 18th were in any respect common; e. g. whether the cars observed were running in the day or night, whether the cars were running on the regular schedule or under an emergency of a blockade, or whether the time-table was the same.    The intestate was a market gardener, who went to market four times, three times, and sometimes once a week.    His wife was asked this question by the learned counsel for the plaintiff: "Q. What would he average each load?  How much would the product of each

load average?"—which was objected to as incompetent, immaterial, and not evidence of earning capacity. The court ruled, "If she knows, she may state," and an exception was taken. The witness then answered that he would average from $30 to $35 each load. It then appeared that the intestate employed from one to four men, three of them for the spring, summer, and fall months, who assisted in raising the produce; that he owned 80 acres of land, which he worked; and that he employed horses, wagons, and farm implements in the business. The defendant again moved to strike out the testimony as to the earning capacity and the products of the farm, as testified to, on the ground that capital was involved in the earning capacity of this man, and the capital went to earn a portion of the money or the profits testified to by the witness. The motion was denied, under exception. I am of opinion that this testimony was not evidence. Masterton v. Village of Mt. Vernon, 58 N. Y. 391, 396; Read v. Railroad Co., 32 App. Div. 503, 509, 53 N. Y. Supp. 209; Blate v. Railroad Co., 29 App. Div. 388, 51 N. Y. Supp. 590; Johnson v. Railway Co., 52 Hun, 111, 114, 4 N. Y. Supp. 848. The reasons for the rule of exclusion are stated at length in the Masterton Case, supra, and again in the Read Case, supra, by Woodward, J., and hence it is unnecessary to restate them. In the Masterton Case, the court, after reviewing the decisions, say, per Grover, J.:

"In none of these cases is any intimation given that proof may be given as to the uncertain future profits of commercial business, or that the amount of past profits derived therefrom may be shown, to enable the jury to conjecture what the future might probably be. These profits depend upon too many contingencies, and are altogether too uncertain, to furnish any safe guide in fixing the amount of damages."

Under the rule laid down in that case, the plaintiffs could have proved the business in which the intestate was engaged, its extent, the particular part transacted by him, and, if they could, the compensation usually paid to persons doing such business for others. The testimony admitted stated the past receipts of a business, not dependent entirely upon personal services, but which involved the use of capital, some 80 acres of land, horses, wagons, farm implements, and the labor of hired servants, while the receipts admittedly varied according to the condition of the markets.

These errors, in our opinion, necessitate a new trial, but one other exception requires comment. The learned court charged the jury that the defendant's car had "no paramount right of way there," and the defendant excepted thereto. The intestate was turning into Myrtle avenue from Deboo place, which bisected, but did not intersect, Myrtle avenue, or, in other words, which ran into it, forming a cul-de-sac, but did not run across it; nor was there any street which ran out of the other side of Myrtle avenue, so as to form, in connection with Deboo place, practically a road of transit over Myrtle avenue. It is well settled that a surface street railroad car has a paramount right of way over the part of a street covered by its rails, and lying within any two lines of corresponding rails, save at intersecting streets, or where there is a practical continuation of a bisecting street, where the rights of the car and of the vehicle crossing are

equal. Huber v. Railroad Co., 22 App. Div. 426, 48 N. Y. Supp. 38; Buhrens v. Railroad Co., 53 Hun, 571, 6 N. Y. Supp. 224, affirmed in 125 N. Y. 702, 26 N. E. 752; O'Neil v. Railroad Co., 129 N. Y. 125, 130, 29 N. E. 84, 26 Am. St. Rep. 512. The reason for this limitation is plain, and is given by Earl, J., in the O'Neil Case, supra. The car has a right to cross, and must cross, the street; and the vehicle has a right to cross, and must cross, the railroad track. But the reason for the rule ceases where there is no cross street. In Bresky v. Railroad Co., 16 App. Div. 83, 45 N. Y. Supp. 108, this court, per Goodrich, P. J., said that this paramount right must be exercised in a reasonable and in a prudent manner; and therefore I think that, though such right exists where the rails pass a cul-de-sac, yet the exercise thereof must be commensurate with the obvious difference between the unbroken part of a street and the part where broken by the entrance of a cul-de-sac which is used by vehicles for access to that street. For though the vehicles cannot use the cul-de-sac to cross the street, which necessarily is to pass over the rails, they may use it to enter the street; and therefore the paramount right must be exercised with ordinary reason and prudence, in view of this use and the physical condition of the locality. For example, if a motorman knew, or, in the exercise of ordinary care, prudence, and experience, ought to have known, that at the locality in question vehicles were accustomed to enter the street, and that the condition of the entrance was such as warranted such vehicles, when managed with the same degree of care, to encroach temporarily upon the track while turning into the street from the cul-de-sac, it would be error for the court to refuse a request to charge the jury that this paramount right must be exercised with such ordinary and reasonable prudence as was commensurate with such circumstances. Such qualification would be proper, because the right is but paramount, and not exclusive. The judgment and order must be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.