.Heer, Administratrix, Respondent, vs. Warren-Scharf Asphalt Paving Company, Appellant.

*April 22—May 8, 1903.*

.*Negligence: Steam roller: Operation so as to frighten horses: Personal injuries: Contributory negligence: Evidence: Measure of damages: Instructions to jury: Material error.*

:1. Where a steam roller, at the time plaintiff attempted to pass, had ceased operation, and was standing stationary, outside the limits of the driveway of a street, it cannot be said to be negligence, in law, to attempt to drive past it.

:2. Where a steam roller, standing stationary outside the limits of the driveway of a street, is started from its condition of rest and quietude into motion at the moment a passing horse is slightly in front of the roller, such action warrants a finding by the jury that it was calculated to frighten even a gentle horse, and, under the duty which rests upon all men to so conduct themselves as not to place others in serious peril, that it was negligence so to do.

:3. In such case, it is not error to refuse to hold, as matter of law, either that plaintiff was guilty of contributory negligence, or that defendant was free from negligence.

-4. In an action for negligence resulting in personal injuries, it appeared, as descriptive of the physical and mental labor which plaintiff had been able to perform prior to his injury, that he conducted a grocery business alone, but for trifling assistance from a boy, doing the buying, selling, etc., working twelve to fourteen hours per day. Plaintiff then proceeded to describe the character and magnitude of the business—specifying the articles dealt in, the manner of their purchase—and, having no books, testified that the average stock carried was about $2,000, the average annual sales about $7,000, and the average net profits about twenty per cent. of the sales, or '$1,500. The court instructed the jury that the plaintiff could recover in addition to the usual items of expense of treatment, past and future suffering, etc., "the loss of earnings of the plaintiff which he has already suffered, and which you are reasonably certain he will suffer in the future." Such instruction was conceded to be a correct abstract statement of the law. *Held*, that if further instructions were necessary or proper to guard against misapprehension by the jury of the effect of the evidence above mentioned, appellant should have

made request therefor, without which no error could be as-- signed upon their absence.

5. In an action for negligence resulting in personal injuries, evi- dence may be given to show fully the capacity of plaintiff to· labor before the injury, and if his work consisted in the man- agement of a business, the character and magnitude thereof,. not that the jury is to allow any loss of such profits as dam- ages, but to consider them, with other elements, as descriptive of the amount and grade of the services of which plaintiff was· capable.

6. In an action for negligence whereby plaintiff's horse was caused' to run away, error—urged for the first time on appeal—can- not be assigned upon the admission of testimony that plaint- iff's horse was gentle, on the ground that witness did not es- tablish that it was the same horse, where the witness testified it was a horse owned by plaintiff in 1898, and plaintiff testified· that the horse which ran away was one owned by him for a. year prior to October, 1898. Any doubt on that subject could have been cleared up on the trial had defendant suggested it. by objection.

7. Plaintiff, a groceryman forty-five years of age, received injuries involving great suffering for several months, and which left him a hopeless cripple, condemned to crutches for life. *Held*,. that a verdict of $8,000 was not excessive.

MARSHALL, J., dissenting, is of the opinion:

(a) The rule, that on appeal error is not presumed, goes· only to prevent consideration of matters not appearing upon. the record, not in minimizing error which does appear.

(b) Error appearing on the record is presumed to have been· prejudicial unless the contrary appears beyond reasonable· probability.

(c) Where evidence is improperly admitted, the party duly objecting and excepting may stand upon his rights without further action. He is not called upon to request instructions which will render such evidence harmless or be held to have· waived the error.

(d) An instruction good as an abstract statement of a legal principle, applicable to a case, does not render improper evi- dence harmless so long as such evidence may, within reason- able probabilities, have been viewed prejudicially.

(e) The rule that lost past profits to a person, as to his· business conducted by a combination of his personal services· or other labor and capital, by a partial or total suspension of such business, measuring such profits by some reasonable,.

definite standard, such as profits realized in the same business before it was wrongfully interfered with, are recoverable of another causing such suspension,—does not apply to consequential damages caused to a person engaged in such business by reason of his being wrongfully injured so as to be partially or totally disabled from attending to the same as usual, either as an independent element of damage, or as a basis for determining loss sustained by such person being injured in his earning power.

(f) Profits of a business enterprise, combining capital and labor, do not in any case constitute a legitimate basis for estimating the earning power of one personally contributing the element of labor, in case of his being wrongfully injured so as to be unable as usual to furnish such element.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action for personal injuries suffered as the result of the runaway of the horse of plaintiff's decedent, Damian Heer, who was the original plaintiff, and died after judgment. He will hereinafter be referred to as plaintiff. The runaway is claimed to have been caused by the negligence of defendant's employee in suddenly starting its steam roller into operation as the plaintiff was driving past it. The evidence tended to disclose that Grand avenue, in Milwaukee, between Ninth and Tenth streets, is a double street, having a driveway of some thirty-five feet on each side, and between the two a park or boulevard of thirty or forty feet in width. Where Tenth street crosses this boulevard, there is at the intersection a soldiers' monument. As plaintiff was driving westward on the north driveway, and some seventy feet before he reached Tenth street, the defendant's steam roller, which during the day had been at work on Tenth street, orth of Grand avenue, was run southerly across the driveway, into the space by the monument, and stopped. As it went across, it disturbed a team ahead of the plaintiff, and he stopped and waited until it had become stationary in this space; it having been run in there, not in the course of rolling the street, but to wait for the rest of the paving gang. After it had stopped, and the

other team had passed on, plaintiff proceeded to drive past it. Just as he got opposite the roller—the horse's head, and perhaps body, past it—it started northward toward him. His horse became frightened and shied, but he was able to pull it back into the street, but the roller continued its northward movement toward him, whereupon the horse bolted, became wholly unmanageable, and ran a block to the intersection of Eleventh street, where the wagon was overturned and the plaintiff injured. The jury found, by a special verdict: (1) The injury; (2) the horse was of ordinary gentleness; (3) the steam roller, while standing still, was not calculated to frighten such a horse; (5) the roller, when operated, was naturally calculated to frighten such horse when in such proximity; (6) such likelihood ought to have been known to a person of ordinary intelligence; (7) the roller did frighten plaintiff's horse; (8) which by reason of such fright got beyond control and ran away; (9) such control was not regained; (10) the steam roller was not stationary when the horse was frightened; (11) it had been stationary just before the plaintiff attempted to cross the intersection of Tenth street; (12) it started up while plaintiff was crossing that intersection; (13) the horse was frightened by such starting up; (14) the employee in charge was negligent in so starting up; (15) such negligence was the proximate cause of the injury; (16) plaintiff was guilty of no want of ordinary care contributing to the injury; (17) damages, $13,500. Defendant moved for nonsuit and for direction of a verdict at the close of all the evidence, and before judgment moved to set aside the special verdict and grant a new trial. All of said motions were denied, except that the plaintiff was required to remit $5,500 from the verdict, which he did, whereupon judgment was entered for $8,000 damages, and costs, from which the defendant appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles,* and oral argument by *W. C. Quarles.*

For the respondent there was a brief by *Adolph G. Schwefel* and *Joseph B. Doe,* attorneys, and *Hoyt, Doe, Umbreit & Olwell,* of counsel, and oral argument by *Mr. Doe.*

DODGE, J. The first assignment of error argued is upon the refusal of the court to hold, upon one or other of defendant's motions, that the evidence conclusively established contributory negligence in the plaintiff, and acquitted the defendant of negligence. Much of the discussion and citation of authority is addressed to situations or conduct which possibly the evidence tended to establish, but which are negatived by the verdict of the jury upon conflicting evidence. We have no doubt that, while certain of the specific findings are controverted by the appellant, the verdict thereon is sustained by the evidence, namely, that the roller was not in course of operation in rolling the street at the time that the plaintiff sought to pass it, but had ceased such work, and was standing stationary outside of the limits of the driveway; that while so standing it was not negligence, in law, to attempt to drive past it; and that (what is specially controverted) the machine was started from a condition of rest and quietude into motion at the moment most likely to frighten a horse near it, namely, when it was slightly behind him. From these facts we are constrained to hold that it cannot be said, as matter of law, that it was not negligent to unexpectedly start such an appliance when a passing horse was within thirty or forty feet of it; and this, too, without at all controverting the proposition that the use of such a roller upon the streets of a city is lawful, and that one who approaches it while in its ordinary employment of being moved back and forth would be presumed to accept the peril of his horse being frightened thereby. We are persuaded that the jury were not trespassing beyond the bounds of reasonable judgment in declaring that the sudden transmutation of such an appliance from stillness and silence into an approach toward a horse, with

the necessary accompaniment of noise and escaping steam, was calculated to frighten even a gentle horse, and that, under the duty which rests upon all men to so conduct themselves as not to place others in serious peril, it was negligence to cause this transmutation. We therefore reach the conclusion that no error was committed by the trial court in refusing to hold, as matter of law, either that the plaintiff was guilty of contributory negligence, or that the defendant was free from negligence.

The most vigorously debated assignment of error is based upon the admission in evidence of the fact that the average annual profits of plaintiff's business for ten years before his injury had been about $1,500. The question is discussed by the appellant as if this fact had been proved and submitted to the jury as a measure of plaintiff's damages. He argues with much force and much authority that the net profits of a business involving capital include other items than the mere personal services of the owner, and that they are neither a safe nor a correct measure of the damage resulting to him from mere inability to render such services. 1 Sedgwick, Dam. § 181; 8 Am. & Eng. Ency. of Law (2d ed.) 654; *Chapman v. Kirby,* 49 Ill. 211; *Kinney v. Crocker,* 18 Wis. 74; *Ripon v. Bittel,* 30 Wis. 614, 618; *Luck.v. Ripon,* 52 Wis. 196, 200, 8 N. W. 815; *Bierbach v. Goodyear R. Co.* 54 Wis. 208, 11 N. W. 514. This position may well be conceded, and we should have little doubt that submission to the jury of the profits of this business as the measure of either of plaintiff's earning capacity, or of his damages from personal disablement, would have been erroneous. Examination of the record, however, fails to establish such fact or situation. The plaintiff, as descriptive of the physical and mental labor which he had been able to perform prior to his injury, testified that he conducted this business alone, but for trifling assistance from a boy; doing the buying, selling, etc.; working twelve to fourteen hours per day. He then proceeded to de-

scribe the character and magnitude of the business—specifying the articles dealt in, the manner of their purchase—and, having no books, testified that the average stock carried was about $2,000, the average annual sales about $7,000, and the average net profits about twenty per cent. of the sales, or $1,500. The court instructed the jury that the plaintiff could recover in addition to the usual items of expense of treatment, past and future suffering, etc., "the loss of earnings of the plaintiff which he has already suffered, and which you are reasonably certain he will suffer in the future." This appellant concedes to be a correct abstract statement of the law. If further instructions were necessary or proper to guard against misapprehension by the jury of the effect of the evidence above mentioned, the appellant should have made request therefor, without which no error can be assigned upon their absence: The mere admission of the evidence is therefore the only debatable ground of complaint. The authorities—those cited by appellant as well as others—are substantially uniformly to the effect that, as a basis for the jury's estimation of damages, evidence may be given to show fully the capacity of plaintiff to labor before his injury, and, if his work consisted in the management of a business, the character and magnitude thereof. Sedgwick, Dam. §§ 180, 181; 8 Am. & Eng. Ency. of Law (2d ed.) 653, 654; *Phillips v. L. & S. W. R. Co.* L. R. 5 C. P. Div. 280; *Ehrgott v. New York,* 96 N. Y. 264, 275; *Thomas v. U. R. Co.* 18 App. Div. 185, 45 N. Y. Supp. 920; *Pennsylvania R. Co. v. Dale,* 76 Pa. St. 47; *Hanover R. Co. v. Coyle,* 55 Pa. St. 396; *Goodhart v. P. R. Co.* 177 Pa. St. 1, 16, 35 Atl. 191; *Wallace v. P. R. Co.* 195 Pa. St. 127, 45 Atl. 685; *Alabama G. S. R. Co. v. Yarbrough,* 83 Ala. 238, 3 South. 447; *Wallace v. W. N. C. R. Co.* 104 N. C. 442, 10 S. E. 552; *Rio Grande W. R. Co. v. Rubenstein,* 5 Colo. App. 121, 38 Pac. 76; *Ballou v. Farnum,* 11 Allen, 73; *Denver v. Sherret,* 88 Fed. 226; *Kinney v. Crocker,* 18 Wis. 74; *Ripon v. Bittel,* 30 Wis. 614; *Luck*

· *v. Ripon,* 52 Wis. 196, 8 N. W. 815. Many of these cases go· to the exact proposition that, in thus describing such business, it is competent to prove the magnitude of the profits therein— not that the jury is to allow any loss of such profits as damages, but to consider them, with other elements, as descriptive of the amount and grade of the services of which the injured man was capable. When that is ascertained, the jurymen are to· apply their judgment and common knowledge in deciding what money-earning capacity results from the ability to ren- der such services. This, of course, they may do without the aid of expert opinions. *Blair v. M. & P. du C. R. Co.* 20· Wis. 262, 264; *Luessen v. Oshkosh E. L. & P. Co.* 109 Wis. 94, 85 N. W. 124; *Meyer v. Mil. E. R. & L. Co.* 116 Wis. 336, 93 N. W. 6. When such money-earning capacity of the· plaintiff, sound, is ascertained, the jury are then ready to as- certain the extent of its impairment by the injury. As we read the record, in light of the rule that all reasonable pre- sumption must be indulged against error (*Edwards v. Smith,* 48 Wis. 254, 3 N. W. 758), we find nothing to justify the· conclusion that the evidence went any further than is war- ranted by the rules above stated, namely, to prove the quality, character, and amount of personal service which plaintiff did· perform before the accident; thus distinguishing the case at bar from *Bierbach v. Goodyear R. Co.* 54 Wis. 208, 11 N. W. 514. True, the court stated, in overruling an objection to the average past profits, and evidently in response to an· argument of appellant's counsel, that such evidence was ad- mitted subject to the rule that other proof must be brought in to make future profits a measure of damage. He may· have then expected that a claim for loss of prospective profits· as damages was going to be made, but none appears. Plaint- iff made no attempt to prove that the business was less profit- able during some months that it continued to run, nor that it might not have run with equal profit thereafter, had plaint- iff not decided to sell out. Again, when the case was sub-

mitted to the jury, they were not authorized to allow any damage by reason of lost or diminished profits, but merely the loss of earnings of the plaintiff. They apparently did not adopt $1,500 per annum as a measure of his loss of earnings, for the $13,500 awarded would supply an annuity of only about $900 at plaintiff's age when injured. We conclude that no error affirmatively appears in the admission of this evidence.

These considerations render unnecessary any discussion of appellant's contention that the prospective profits were left by the evidence too uncertain and conjectural. Since, as said above, no such profits were allowed as damages, inadequacy in their proof is not material.

Error is assigned upon admission of testimony that plaintiff's horse was gentle, upon the ground—urged in this court for the first time—that the witness did not establish that it was the same horse. He said it was a horse owned by plaintiff in 1898. Plaintiff testified that the horse which ran away was the one owned by him for a year prior to October, 1898. This was obviously deemed by the court below to establish identity sufficiently to enable the witness to testify. Any doubt on that subject could have been momentarily cleared up, had appellant suggested it by his objection. The error is not well assigned.

We cannot say that the $8,000 damages as finally allowed are excessive. The plaintiff, when injured, was in his prime—forty-five years of age—with expectancy of life twenty and one half or twenty-four and one half years, according to different tables. His injuries involved great suffering for several months, and left him a hopeless cripple, condemned to crutches for life. The degree of such disablement was largely evidenced by his own appearance, of which jury and trial judge had advantage. The amount awarded, without deducting that allowed for expenses and suffering, would, at present rates, purchase an annuity of about $570.

We cannot say that this would greatly or at all exceed the impairment of his earning capacity, as the jury and trial judge might have believed it to be from the evidence before them.

*By the Court.*—Judgment affirmed.

MARSHALL, J. I concur in the decision except as to the assignment of error respecting the establishment of loss of business profits to enable the jury to determine the element of damages chargeable to diminished earning capacity. In my judgment such decision is contrary to the great weight of au·· thority, contrary to the rule of this court as it has stood for about a quarter of a century and been one of the chief guides of courts and text-writers, and the conclusion was reached by unsound reasoning and a misconception of the authorities cited in support thereof. If I fail to demonstrate all that, my dissent will stand without the justification which I firmly believe it possesses.

At the outset my brethren concede that if the trial court had instructed the jury that lost business profits could be taken as the plaintiff's damages on account of diminished earning power, prejudicial error would have been committed. They say that all the court said to the jury in the instruction on that subject was that diminished earning power was one of the consequential elements of damages from the injury which plaintiff was entitled to be compensated for, which, as a statement of abstract law, was right. They suggest that if further instructions were desired to guard against the jury's adopting a wrong rule in view of the evidence, appellant's counsel should have requested the same, and that, failing to do so, it has no reason to complain. I confess utter ignorance of any such rule, applicable to the situation to which it was applied. True, an instruction, correct as a statement of abstract law, thought not as explicit as it might be, is deemed free from prejudicial error. It is often said that, if more definite instructions are needed by either party, he is deemed

to have waived the same by failing to make a request in that
regard.   But I think it needs no discussion to demonstrate
that evidence so offered and received against·objection as to
establish a wrong rule of damages, is not rendered harmless
by an instruction in respect thereto good in the abstract but
not calculated to change the direction of the jurors' minds
as to the wrong rule,—so change it as to remove any proba-
bility of its influencing the verdict.   That is, an instruction
good in the abstract will not cure error in the admission of
evidence when not given so as to clearly have that effect.
Again, a person menaced by improper evidence admitted, is
never called upon after having taken proper exceptions to re-
quest an instruction which, if given, would ward off the
danger, or be held to have waived the exception.   To refer to
the rule that an instruction good as far as it goes, based on
authorities like *Weisenberg v. Appleton,* 26 Wis. 56, and *Nat.
Bank of Merrill v. Illinois & W. L. Co.* 101 Wis. 247, 77 N.
W. 185, cannot be deemed erroneous because not as clear as
it might have been, to cure error in the admisssion of evi-
dence, because, from the standpoint of the lawyer, the in-
struction is susceptible of a construction rendering such evi-
dence harmless, we take it, is an entirely new application
thereof.   The true one is that evidence erroneously received
is presumed to be prejudicial till the contrary appears, and
that due exception to the ruling admitting it preserves the
right to challenge such ruling upon appeal.   This is ele-
mentary:

"The presumption is that error produces prejudice.   It is
only when it appears so clear as to be beyond doubt
that error challenged did not prejudice and could not have
prejudiced the complaining party, that the rule that error
without prejudice is no ground for reversal, is applicable."
*Deery v. Cray,* 5 Wall. 795, 808; *Smiths v. Shoemaker,* 17
Wall. 630, 639; *Moores v. N. Bank,* 104 U. S. 625, 630;
*Mexia v. Oliver,* 148 U. S. 664, 673, 13 Sup. Ct. 754; *Boston
& A. R. Co. v. O'Reilly,* 158 U. S. 334, 337, 15 Sup. Ct.

830; *Peck v. Heurich,* 167 U. S. 624, 630, 17 Sup. Ct. 927; *Choctaw, O. & G. R. Co. v. Tennessee,* 116 Fed. 23, 30.

The point above discussed we deem of great significance in the opinion of my brethren. I assume that, without the aid of the rule invoked that on appeal the presumption is against error, a different result would have been reached. To my mind such rule had no legitimate application whatever to the situation. I hope I do not misjudge the language of the court's opinion, or speak in respect thereto otherwise than with that respectful consideration due to the combined judgment and personal considerations and labor that produced it. However, I cannot do justice to myself without emphasizing my dissent from the doctrine that the rule of presumption · against error can be legitimately applied as it was here. True, as my brethren say, "error must affirmatively appear" to be appreciated at all on appeal. They cite on that *Edwards v. Smith,* 48 Wis. 254, 3 N. W. 758, which is to the effect that error not appearing upon the face of the record cannot be inferred to exist. But pray where is the authority that error appearing upon the record is in any case presumed not to be prejudicial error till the contrary appears clearly; or the authority that an exception to improper evidence can be rendered unavailing by presumption, or anything short of a showing rendering harmful effect therefrom not within reasonable probabilities. The language of the federal court shows the unbending nature of the rule for which we contend. The rule of this court is the same. *Gibbons v. W. V. R. Co.* 62 Wis. 546, 22 N. W. 533; *Hopkins v. Rush River,* 70 Wis. 10, 34 N. W. 909, 35 N. W. 939; *West v. Wells,* 54 Wis. 525, 11 N. W. 677; *Small v. Champeny,* 102 Wis. 61, 68, 78 N. W. 407; *Buel v. State,* 104 Wis. 132, 80 N. W. 78.

It seems that the foregoing amply demonstrates that the process of reasoning adopted by my brethren, to support the conclusion that if the evidence in discussion was not in all respects proper the record does not show that the rulings upon

objections thereto were prejudicially wrong, will not bear the test of the authorities. Now we will endeavor to briefly show that the evidence was offered and received not only so as to be liable to lead the jury to regard the profits of the grocery business as a basis for measuring plaintiff's earning capacity, but that in all reasonable probability they did so regard it. All that is necessary on that branch of our discussion is to give a *verbatim* history of the proceedings bearing on the point. No comment upon it will be necessary.

When counsel for respondent in the course of the trial took up the task of proving the damages of plaintiff by diminished earning power, this is what occurred:

"Q. At the time of this accident about what were your earnings in your business?

"A. What do you mean, my net profits?

"Q. Yes, your net profits?

"A. My net profits was about $1,500 a year.

"Defendant's Counsel: I move to strike out the answer.

"Court: I shall let it stand for the present. I do not know what it may be followed by.

"Exception by the defendant.

"Witness: I haven't earned anything since the accident because I can't do anything,—ain't able to do anything.

"Q. This grocery business that you were running up in Galena street,—tell the jury what kind of a business it was and how you ran it; that is to say, whether you were hired as clerk, whether you were proprietor and had clerks, and what kind of a business you were running?

"Objected to as immaterial and irrelevant.

"Objection overruled. Exception.

"A. Well, I had a pretty fair business. I think I was doing about as good as the best ones on the West Side did.

"Defendant's counsel moved to strike out the answer as not responsive.

"The last portion was struck out; the other allowed to stand.

"Exception.

"Witness: I was not hired as a clerk. It was my own business. I hired help. I had one boy working for me, but

not at the time this happened.  I had my own boy then, my son.

"Q. What was his age?

"A. Sixteen years old.  'I did a retail business.  I had owned that business about fifteen years.        •

"Q. Say for ten years prior to October 4, 1898, what had been your average earnings in your business; net earnings?

"Objected to as irrelevant, incompetent and immaterial, and no proper foundation laid for the question.

"Objection overruled.  Exception.                           o

"Court: Of course it is always on the theory that plaintiff will bring in all the proof necessary in order to make loss of future profits a proper subject for damages.

"A. In the whole ten years you mean?

"Q. The average, taking the loss and gains, the average for ten years.  What was it about?

"A. About $1,500 a year.

"Q. About what was the amount of your annual sales?

"A. (Under objection) Well, we didn't keep book over them only once in a while in the poorest season, when we had time enough to do that.  Used to keep some times in a year for four or five or six weeks; keep up our sales, and then figure out our profits out of that.  In a busy season we hardly got time to do that.                           •

"Q. How many thousand dollars' worth a year of goods were you seling?

"A. I never kept time of that.

"Q. How can you tell what your profits were then?

"A. I can figure out the profits out of a week or two or three.

"Q. How much did you buy?

"A. I never kept time of that.                           .

"Q. What was about the value of the stock you carried?

"A. (Under objection) About $2,000.        -

"Q. How often did you renew your stock?

"A. Well, as soon as we run out of one article we buy that over again.

"Q. What was the amount of your sales for the year preceding the accident?

"Objected to as irrelevant and immaterial and no proper foundation laid for the question.

"Objection overruled. Exception by defendant.

"Court: I shall allow this question if connected with other questions as to previous years.

"A. At the lowest figure I would figure it about $25 a day. That would make $150 a week. That would come in a year over $7,000.

"Q. About what were your sales for the year previous to the year of the accident?

"A. (Under objection) I think about the same.

"Q. You may state generally about how much was the total amount of your yearly sales for the ten years preceding the accident?

"A. (Under objection) Well, over $7,000 a year.

"Q. About what was your average percentage of profit?

"A. (Under objection) About twenty per cent. or probably a little over.

"Q. During say ten years prior to the accident did you keep in your store regular books of account?

"A. No, I did not.

"Q. Was the building you occupied as a store your own building?

"A. My own building.

"Court: Have you that building rented now?

"A. Yes.

"Court: What rent do you get for it?

"A. $30 a month.

"Court: That is for the building alone?

"A. For the building alone."

We have quoted substantially all the evidence produced bearing in any way directly on the subject of the plaintiff's loss as to diminished earning capacity by reason of his being unable to attend to his business as usual. It refers, it will be seen, to loss of business profits. Such loss was at the very outset of the examination put forward as the measure of diminished earning power. The witness said:

"The net earnings in my business was about $1,500 a year before I was injured; I haven't earned anything since the accident."

We submit confidently, if it were proper even to hold that error is not to be deemed prejudicial unless it seems reasonably certain or at least probable that prejudice was in fact effected thereby, that if the evidence detailed put before the jury an erroneous basis from which to compute diminished earning power, the error in that regard cannot be passed as harmless. When the true rule is applied that error which, within reasonable probabilities, operated harmfully, constitutes good cause for judicial redress, there can be no reasonable doubt, it seems, that appellant has clear ground for complaint. No one, as appears to us, can read the quoted proceedings without receiving at once the idea that net business profits, income from capital combined with personal work, was put before the jury as the plaintiff's earning capacity before he was injured, or at least as a basis for computing the same, leaving it to the jury to make proper deductions for interest on capital, use of building and horse, value of help and other matters. My brethren admit that the evidence had the latter effect, and we will endeavor to show that such admission is enough to condemn the result reached. How can it reasonably be said that the idea was taken from the minds of the jury that the lost profits were not of themselves the proper measure, by the mere use of the words in the instruction to the effect that plaintiff was entitled to recover for diminished earning capacity, nothing being said about loss of business profits? How can it be said that the language of the court did not probably lead the jury to understand, if they did not before, that loss of business profits was synonymous with loss of earning power. When one calls to mind how easy it is to fail to distinguish between business profits and personal earning power in a case like this, is it not plain that a layman would be quite likely to look upon the two as synonymous, especially since in no other way could lost business profits be recovered? How could it be said otherwise, when

even courts have been at times puzzled with the matter, as we shall hereafter show?

My brethren suggest, as evidence that the jury did not take the business profits testified to as a basis of earning power, that if they had the verdict would have been larger. Here, again, the process of reasoning by which the decision is supported is one with which I cannot agree. It fails to take notice of the fact that the jury must have understood that full earning capacity does not last to the end of the expectancy of life; that it diminishes with age; that it is subject to the contingency of sickness and many probable interferences. And, again, the evidence did not warrant the belief that the plaintiff's earning power was totally destroyed. Facing the situation, as the jury must have done, in a sensible disposition of the issue before them, we must see at once that the fact that they did not render a verdict on the basis of diminished earning power to the extent of plaintiff's business profits at the time he was injured, for the period of his expectancy of life, does not furnish even a well-grounded suspicion that such profits were not taken primarily as the measure of his earning power at the time he was injured.

We will now endeavor to show that the allowance of evidence of plaintiff's business profits as a basis for computing his damages, past and future, on account of diminished earning power, was plainly prejudicially improper, tested by decisions of this court.

The first case decided here, of importance in our discussion, which has been referred to as furnishing support for the decision of my brethren, is *Kinney v. Crocker,* 18 Wis. 74. The court there held that past profits lost in the business of operating a flour mill, consequent upon a personal injury to the proprietor, were recoverable. The idea of using past profits for estimating diminished future earning power is not in the case. The next case is *Blair v. M. & P. du C. R. Co.*

20 Wis. 262. That likewise related only to lost past profits. It is as foreign to the question now before us as the first case referred to. Next we have *Ripon v. Bittel*, 30 Wis. 614. That also relates to recovery of past loss for diminished earning power by relation to business profits. It, too, has no bearing on the case before us when rightly understood, though it will be seen by what will be said later that the case is out of harmony with the current of authority. The next is *Luck v. Ripon*, 52 Wis. 196, 8 N. W. 815. There profits, not of a commercial business, or any business combining labor and capital, but profits in the sense of avails of personal service, strictly so called, in the vocation of midwifery, were held proper to be considered on the question of diminished earning power, past and future. That is also foreign to this case, it will be seen without comment.

The next case is *Bierbach v. Goodyear R. Co.* 54 Wis. 208, 11 N. W. 514. The point under discussion was there presented to this court squarely for the first time. The plaintiff, when injured, was a manufacturer and dealer in machinery. On the trial he was permitted to testify in relation to his damages by reason of diminished earning capacity, that the average worth of his business before he was injured was $75 or $100 per month; that by reason of his injury he was compelled to give up his business. The point was made on appeal that proof of past profits in a mercantile business as a basis for proof of future damages to the proprietor thereof on account of the personal injury disabling him from continuing such business, was improperly received. It will be observed at once that the identity of the point presented with the one before us is perfect in every respect. The court, referring for authority to *Wade v. Leroy*, 20 How. 34; *Nebraska v. Campbell*, 2 Black. 590; *Masterton v. Mount Vernon*, 58 N. Y. 391, and *Lincoln v. S. & S. R. Co.* 23 Wend. 424, all of which are directly in point, said, as a basis for the assessment of damages, proof of the average value of the

plaintiff's business, while he carried it on, was clearly incompetent:

'It could not be established to enable the jury to estimate therefrom what the future profits would have been had the plaintiff not been injured, and had he continued the business. Such a basis for the estimation of future profits of the business in which the plaintiff was engaged is altogether too uncertain to furnish a safe guide for the verdict of the jury.'

An examination of the briefs used upon the argument of the case last above discussed, in connection with the report found in the books, leaves no reasonable ground, as it seems, to hold otherwise than that the evidence admitted was introduced, as in this case, for the purpose of proving diminished earning power by reason of inability to go on with the business of manufacturing machines and the prospective damages suffered thereby. That decision, in the twenty-one years since it was made, has never been doubted here to be a sound declaration of the law. During such time it has stood as a guide to bench and bar in this state and other states as well, as will be observed by noting the significance given thereto in the text-books and in decisions of other courts. *Watson, Dam. for Pers. Inj.* § 507; *Sutherland, Dam.* § 1246; 1 *Sedgw. Dam.* (8th ed.) § 181.

Now a few words in respect to the authorities cited by my brethren in support of their decision. I will not take time to refer to them except in a general way. Our Wisconsin cases have been sufficiently discussed. *Ballou v. Farnum,* 11 Allen, 73, is a good type of one class of such authorities. The only point decided there is that in an action of the character of the one before us the plaintiff may introduce evidence to show the kind of labor, mental and physical, he was accustomed to perform before the injury, as compared with what he was able to perform afterwards, for the purpose of enabling the jury to determine what compensation he should receive for his diminished capacity. That is unquestionably sound doc-

trine. There was no question involved in such case of the competency of evidence of past profits of business as evidence of lost earning power, past or future. *Ehrgott v. New York,* 96 N. Y. 264, is a fair type of another class of authorities cited by my brethren. The point decided there was that where the plaintiff was, when injured, engaged in a vocation such as that of a canvasser for the sale of books upon commission, his income depending wholly upon his personal services, evidence of his earnings in such vocation is proper to enable the jury to measure diminished earning power, past and future. That is also sound doctrine. The distinction between cases of that kind and the one before us need not be pointed out. A third class of my brethren's authorities is well represented by *Wallace v. P. R. Co.* 195 Pa. St. 127, 45 Atl. 685. That was a case involving proof of lost profits as bearing on diminished earning power prior to the trial, not as regards future earning power. Substantially all of the numerous authorities cited in the opinion of the court belong to one or the other of the classes given. My brethren, it seems to me, have fallen into a serious error in failing to note the distinction between proof of profits of a business as bearing on past loss, or earnings of a vocation carried on without capital, and profits of a commercial business, and the distinction between proof of the nature of a business performed by one before injury, and what he was able to do thereafter, disassociated with proofs of profits of a commercial business, and evidence of the past profits of a commercial business carried on by a combination of labor and capital as a basis for computing damages as regards diminished earning power.

It is sufficient for my purpose to bring to attention authorities holding that past profits in a commercial business do not constitute a legitimate basis for estimating future loss in respect to reduced earning capacity to the proprietor of such business, attributable to his inability to go on therewith on account of a personal injury. To that the authorities we

shall cite mainly go.   On that precise point the books, we
venture to say, are substantially all one way.   If there are any
out of harmony therewith, even one, we have been unable to
find them.   In asserting that there are none, we have dis-
tinguished company, as we shall show.   The great weight of
authority also condemns the use of evidence of profits of a
commercial business as a basis from which to compute the
earning power of the proprietor, past and future.   If we were
to take time and space to discuss the multitude of cases at
hand and within easy reach, supporting the main proposition,
this opinion would be drawn out to very great length.   We
will cite but a portion of them and comment on and quote
from them to a moderate extent.   We will name the following
as unmistakably in point: *Walker v. Erie R. Co.* 63 Barb.
260; *Masterton v. Mount Vernon,* 58 N. Y. 391; *Johnson v.
M. R. Co.* 52 Hun, 111, 4 N. Y. Supp. 848; *Pill v. B. H. R.
Co.* 6 Misc. Rep. 267, 27 N. Y. Supp. 230; *Thomas v. U. R.
Co.* 18 App. Div. 185, 45 N. Y. Supp. 920; *Read v. B. H. R.
Co.* 32 App. Div. 503, 53 N. Y. Supp. 209; *Hewlett v. B.
H. R. Co.* 63 App. Div. 423, 71 N. Y. Supp. 531; *Silsby v.
Michigan C. Co.* 95 Mich. 204, 54 N. W. 761; *Orsor v. M. C.
T. R. Co.* 78 Hun, 169, 28 N. Y. Supp. 966; *Wade v. Leroy,*
20 How. 34; *Boston & A. R. Co. v. O'Reilly,* 158 U. S. 334,
15 Sup. Ct. 830; *Goodhart v. P. R. Co.* 177 Pa. St. 1, 35
Atl. 191; *Marks v. L. I. R. Co.* 14 Daly, 61; 1 Sedgw. Dam.
(8th ed.) § 181; Sutherland, Dam. § 1246; Watson, Dam.
for Pers. Inj. § 507.

   A study of those citations will show a sharp distinction
between such cases as *Ehrgott v. New York,* 96 N. Y. 264, to
which my brethren refer as substantially like the one before
us, and the latter.   *Masterton v. Mount Vernon, supra,* de-
cided by the court of appeals of New York in 1874, and cited
and followed by this court in *Bierbach v. Goodyear R. Co.*
54 Wis. 208, 11 N. W. 514, is the leading case in New York
on the subject before us, and perhaps it is more often cited

elsewhere than any other case.  There, for the purpose of showing damages attributable to diminished earning power of the plaintiff, who was a tea merchant, he was permitted in the trial court, against objection, to answer this question: "About what had been your profits, year by year, in that business?"  In treating the assignment of error covering the matter upon appeal the court said:

"Where, in such a case, the plaintiff has received a fixed compensation for his services, or his earnings can be shown with reasonable certainty, the proof is competent [citing several cases].  In none of those cases is any intimation given that proof may be given as to the uncertain future profits of commercial business, or that the amount of past profits derived therefrom may be shown, to enable the jury to conjecture what the future might probably be. *These profits depend upon too many contingencies, and are altogether too uncertain to furnish any safe guide in fixing the amount of damages.  . . .*  The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him, and, if he could, the compensation usually paid to persons doing such business for others."

The judgment was reversed.

In *Johnson v. M. R. Co.* 52 Hun, 111, 4 N. Y. Supp. 848, the reception of evidence of the character of that under discussion worked a reversal in the New York court.  The respondent's counsel pointed to *Ehrgott v. New York,* as my brethren do, in justification of the ruling of the court below, but the appellate court said:

"The learned judge admitted the evidence of the aggregate amount of the plaintiff's earnings during the year or two prior to the accident.  This was undoubtedly upon the strength of the decision  .  .  .  of *Ehrgott v. New York,* 96 N. Y. 265, in which a ruling admitting evidence of previous earnings was sustained; that case, however, is clearly distinguishable from the one at bar.  In the case at bar it appears that the earnings of the plaintiff were the result of the use of his capital, and did not depend entirely upon his personal skill and services.  In the case of *Ehrgott* the admis-

sion of the evidence was justified upon the ground that the plaintiff's income was not from capital invested, *but solely from his personal skill and services,* and, therefore, it formed an exception to the rule that previous profits in business are not admissible in evidence in cases of this description, because of their speculative character. . . . *In no case has it been permitted, where the profits of business arise from the investment of capital, that evidence of such profits should be offered for the purpose of enhancing the damages. It is only in cases where the earnings proceed entirely from the plaintiff's labor that the evidence becomes admissible."*

In *Read v. B. H. R. Co.* 32 App. Div. 503, 53 N. Y. Supp. 209, the appellate division of the New York court followed the cases we have quoted from, reaffirmed the doctrine thereof, and took particular pains to indicate that the rule for recovering lost profits as damages for breach of contract has no application to a personal injury action, where the injury complained of consequentially affects the plaintiff's earning capacity in respect to the profits of a business enterprise, combining his personal services with capital, using this language:

"In the case of *Dickinson v. Hart,* 142 N. Y. 183, 36 N. E. 801, relied upon by the plaintiff to support the admission of the evidence as to the net earnings of the firm of which the plaintiff's intestate was a member, the action was for a breach of contract, and as was said in the case of *Walker v. Erie R. Co.* 63 Barb. 267, 'the rule so carefully maintained and guarded in actions upon contracts and for tortious injuries to property, is incapable of being applied where the injury is to the person; for those injuries are without precise pecuniary measure.' "

The same question was up in *Hewlett v. B. H. R. Co.* 63 App. Div. 423, 71 N. Y. Supp. 531, where there was a reversal for the allowance of evidence such as that under discussion, Justice JENKS, who wrote the opinion, saying:

"The plaintiffs could have proved the business in which the intestate was engaged, its extent, the particular part transacted by him, and the compensation usually paid to persons

doing such business for others.   But the testimony admitted stated the past receipts of a business not dependent entirely upon personal services, but which involved the use of capital."

Such admission was held fatal to the judgment.

In *Boston & A. R. Co. v. O'Reilly,* 158 U. S. 334, 15 Sup. Ct. 830, decided by the federal supreme court quite recently,. the point was made, the same as here, that *it was competent for the jury to make due allowance for interest upon capital and other matters chargeable to profits properly, in order to arrive at what part of the profits should be attributed to the earning power of the plaintiff, and thereby arrive at the proper measure of such power and the diminishment thereof by the injury.*   But the court said that the allowance of evidence of the profits of the business was error; that in any event, *"the duty of the jury to find the wages or earnings of the plaintiff, after allowing for the interest on the capital invested, and for the energy and skill of the partners, could not, in the absence of evidence on those topics, have been intelligently performed."*   The judgment was reversed, the court saying that the erroneous admission of evidence could not be overlooked, since it did not "appear beyond a doubt that the error complained of did not and could not have prejudiced the rights of the .party duly objecting."

Having successfully, as it seems, covered the ground mapped out at the commencement of this opinion, my duty is ended.   A brief recapitulation of the points of disagreement will enable one to see at a glance the merits of my position and the infirmity of the reasoning, as I think, which very naturally led my brethren to the conclusion from which I dissent.

1. The rule, that upon appeal error is not presumed, goes only to prevent consideration of matters not appearing upon the record, not to minimizing error which does appear.

2. Error appearing upon the record is presumed to have been prejudicial unless the contrary appears beyond reason-

Heer v. Warren-Scharf A. P. Co. 118 Wis. 57.

able probability. To say that such error is to be deemed harmless unless the major probabilities are to the contrary is a direct reversal of an elementary principle.

3. When evidence is improperly admitted, the party duly objecting and excepting may stand upon his rights without further action. He is not called upon to request an instruction which will render such evidence harmless or be held to have waived the error.

4. An instruction good as an abstract statement of a legal principle applicable to a case does not render improper evidence harmless so long as such evidence may yet, within reasonable probabilities, have been viewed prejudicially.

5. The rule that lost past profits to a person, as to his business conducted by a combination of his personal services or other labor and capital, by a partial or total suspension of such business, measuring such profits by some reasonable, definite standard, such as that of profits realized in the same business before it was so wrongfully interfered with, and recoverable of another causing such suspension,—does not apply to consequential damages caused to a person engaged in such business by reason of his being wrongfully injured so as to be partially or totally disabled from attending to the same as usual, either as an independent element of damage, or as a basis for determining loss sustained by such person being injured in his earning power.

6. Profits of a business enterprise combining capital and labor do not in any case constitute a legitimate basis for estimating the earning power of one personally contributing the element of labor, in case of his being wrongfully injured so as to be unable as usual to furnish such element.

In my view the judgment should have been reversed and a new trial ordered unless the plaintiff should consent to such reduction from the amount recovered as in the judgment of this court would in all reasonable probability cure the error in permitting the evidence we have discussed.