disturbance, and thus the relator's explanation of his not patroling his post was to some extent corroborated. The object of patroling is to detect and suppress disturbances, and merely stopping for observation was not shown to be an infraction of any rule of the department. This case in some features and in principle is like People ex rel. Howard v. Roosevelt, 15 App. Div. 401, 44 N. Y. Supp. 102, where the police officer was sitting on a box, and there was no evidence that he had been there any length of time, and he explained his being there by saying he felt the effects of a wound. It differs from People ex rel. Butts v. MacLean (Sup.) 14 N. Y. Supp. 77, where an officer was discharged for lying down while on duty. There the relator's own testimony in part corroborated that of the roundsman that he was lying down when he should have been patroling, and, besides, the record of the relator was considered, showing previous violations of the rules of the department.

Our conclusion is that the evidence to support the charge is unsatisfactory, and ·did not warrant the relator's dismissal. The writ should accordingly be sustained, the proceedings annulled, and the relator reinstated, with costs. All concur, except PATTERSON, J., who dissents.

---

(91 App. Div. 153.)

McKINLEY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. STREET RAILROADS—ACCIDENT AT STREET CROSSING—EVIDENCE—QUESTION FOR JURY.
   Where the testimony of a person injured by a street car, that he looked, and did not see its approach, before he started to cross the street in front of it, is impeached by uncontroverted physical facts, showing that the car was in plain sight, and he therefore either did not look at all, or did not look with care, his credibility is not involved, so as to take the case to the ·jury.

2. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
   Evidence in an action for personal injuries resulting from being struck by a street car examined, and held insufficient to show freedom from contributory negligence, and negligence on the part of defendant.

Appeal from Special Term, New York County.

Action by William McKinley against the Metropolitan Street Railway Company for personal injuries. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

For former opinion, see 79 N. Y. Supp. 213.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
Charles G. F. Wahle, for respondent.

LAUGHLIN, J. On a former appeal a judgment in favor of the plaintiff in this case was reversed on account of an exception to a refusal to charge. Two of the members of the court concurred upon the ground that the complaint should have been dismissed for the plaintiff's failure to show freedom from contributory negligence, but the majority gave no expression to their views on that question. McKinley

v. Met. St. Ry. Co., 77 App. Div. 256, 79 N. Y. Supp. 213. Upon the new trial there was no material change in the essential facts. The accident occurred on the evening of the 25th day of May, 1899, while it was yet daylight, and before the street lamps were lighted. The plaintiff was struck and injured by a south-bound car of the defendant on the westerly street railway track of Sixth avenue, either on the line of the southerly sidewalk of Forty-First street, or within 30 feet southerly thereof. The plaintiff was crossing Sixth avenue from the southwesterly corner. According to his testimony, which in this regard is corroborated by that of two other witnesses, he was passing directly, or nearly directly, across the avenue, toward Bryant Park, and was struck on, or only a few feet south of, the line of the cross-walk; but, according to testimony of witnesses on the part of the defendant, he was crossing diagonally toward the southeast, and was struck about 23 or 30 feet below the line of the cross-walk. A witness called by the plaintiff testified that he was walking down the westerly side of Sixth avenue from Forty-Second street, his destination being the Herald Building; that he observed a truck coming in the same direction along the southbound track; that this truck turned into Forty-First street, toward Broadway, to the north of the elevated pillar opposite the center of Forty-First street; that he passed behind the truck as it turned into Forty-First street, and, in doing so, walked 2 or 3 feet to the left, out of his line of travel; that, when he had reached a point within 5 or 6 feet of the southerly curb of Forty-First street, he heard a shout, and, on looking, saw that the plaintiff had just been struck by this car, just on, or a few feet below, the line of crossing from the southerly sidewalk of Forty-First street, but that he did not notice either the plaintiff or the car before the accident. Another witness, who was looking over toward Bryant Park from a window on the second floor of No. 716 Sixth avenue, was called by the plaintiff, and testified that he observed the plaintiff 5 or 6 feet from the first rail of the track, and that plaintiff was looking straight ahead, and did not turn his head until the car struck him. The plaintiff testified that he had come from Eighth avenue along the southerly side of Forty-First street, and when he reached the curb at Sixth avenue he observed this truck in the middle of the block between Forty-First and Forty-Second streets, and that there was no car on the south-bound track between him and Forty-Second street; that he then proceeded to cross, and, when he came within 1 or 2 feet of the first rail of the south-bound track, he looked to the north again; that the truck was then turning off, and he could see about 75 feet behind the truck, and there was no car on the track between him and a point 75 feet north of where the truck turned off; that he then "started to cross the street. I took one step when I was hit—one step from the rail. The fender of the car hit me, I suppose. Before this car hit me, I see it when it was five or six feet from me. I started to turn to the right to jump back. Then I was down under the fender. I was struck, and I was down. Before I saw this car within five or six feet of me, I did not see the car. I did not hear anything. I did not hear any gong." On cross-examination he testified that both his hearing and eyesight were good; that he looked for a car two or three times besides looking from the curb, and when 1 or 2 feet from the

track; that one of these times was when he was within 4, 5, or 6 feet of the rail; that at this time he though he could see clear through to Forty-Second street, but was sure that he could see 75 feet. And he further testified:

"When I got a foot or two from the track—the first rail—I say, I looked again. I could see up the track about seventy-five feet from where I was. I suppose I could at that time see clear to Forty-Second street. The truck didn't prevent me. The truck did not prevent me from seeing clear to Forty-Second street. I could see through it. There was nothing at that time to prevent me, when I looked, from seeing clear up Forty-Second street." That, "when I was stepping from the track, I glanced that way, and saw the car right on top of me. And in that moment of time I was in the act of putting one foot over the first rail. I just made one step. When I saw that car four, five, or six feet from me, I was in the act of putting one of my feet over the rail. I was taking a step; yes, sir. And at that moment I saw the car right on top of me. As I was in the act of taking this step, and before I could draw back, I was hit by the car as I started to jump back. * * * I seen the car as I was taking the step. That is the first I saw of it, and I had looked four times before that, and could see as far as Forty-Second street through the truck. * * * I have testified that the truck did not prevent me from seeing as far as Forty-Second street; and I have testified that, just before I put one foot over the rail, I did look up. And I say that when I did look up, and could see as far as Forty-Second street, I saw no car at all."

If the testimony of the witness who was on his way to the Herald Building is to be believed, then the truck had passed off the track and proceeded on its way toward Broadway a sufficient length of time before the accident to afford no obstruction to the plaintiff's view; and, even according to the plaintiff's testimony, it did not obstruct his view. With no obstruction to his view, with nothing to divert his attention, with good eyesight and sufficient light, his testimony is inherently improbable. The accident could not have happened in the manner described by him. The inference is irresistible either that he did not look at all, or did not look with care. Fuller v. Dederick, 35 App. Div. 93, 54 N. Y. Supp. 593; Madigan v. Third Ave. R. Co., 68 App. Div. 123, 74 N. Y. Supp. 143; Id., 80 App. Div. 626, 80 N. Y. Supp. 1140; Fiddler v. N. Y. Cen. & H. R. R. Co, 64 App. Div. 95, 71 N. Y. Supp. 721; Swart v. N. Y. Cen. & H. R. R. Co., 81 App. Div. 402, 80 N. Y. Supp. 906, affirmed in 177 N. Y. ——, 69 N. E. 1131. As well might he say that there was no elevated railway in the avenue, as to say, in effect, that when he was within 1 or 2 feet of the rail of the westerly track there was no car on that track between him and Forty-Second street, or even a point 75 feet beyond where the truck turned off the track, and that, while in the act of taking the next step over the rail of that track, he was struck by a car coming from the north. This is not a case where the credibility of a witness is involved, which takes the case to the jury. His testimony is impeached by physical facts about which there is and can be no controversy. The car was there, and almost upon him, as he stepped upon the track, or he would not have been struck while stepping over the first rail. Aside from his own testimony, the plaintiff presents no evidence upon which negligence of the defendant could be predicated. One witness for the plaintiff testified that the car was "going at a pretty good rate," that the gong was not sounded, and that the car moved 25 or 30 feet after striking the plaintiff. Another of his witnesses says that the car was going fast, that it

moved 15 or 20 feet after striking plaintiff, and that he heard no gong. But this, in and of itself, does not establish negligence. It is to be borne in mind that Forty-First street does not cross Sixth avenue, and, while people are accustomed to cross along the northerly and southerly sidewalk lines of Forty-First street, and vehicles there pass from the avenue into Forty-First street, and vice versa, yet the same conditions do not exist as at a street crossing where there is through cross-traffic. See Hewlett v. Brooklyn Heights R. Co., 63 App. Div. 423, 71 N. Y. Supp. 531; Towner v. Brooklyn Heights R. Co., 44 App. Div. 628, 60 N. Y. Supp. 289. The motorman could see any pedestrians or vehicles in Sixth avenue; none could come from the east; and he was therefore merely obliged to operate his car with that care and caution that would enable him to prevent injury to those who were in the exercise of care in the avenue, or those coming from Forty-First street. At the time in question it does not appear that there was any one in the vicinity of the track, opposite Forty-First street, except the plaintiff. If he looked when within one or two feet of the track, as he testifies, the car had then undoubtedly passed over the northerly line of Forty-First street, and must.have reached the middle of the crossing, or further south; and the motorman would have a right to assume that the plaintiff, in thus looking toward the car, would see it, and would not step in front of it. In no rational view of the plaintiff's testimony is negligence on the part of the defendant shown.

At the close of the plaintiff's case, counsel for defendant moved for a nonsuit on the ground that plaintiff had not shown freedom from contributory negligence, and had not shown negligence on the part of the defendant; and to the denial of the motion an exception was taken. We are of opinion that the motion should have been granted. No evidence on the part of the defendant, fairly considered, tends to sustain the plaintiff's claim sufficiently to support the verdict. The defendant renewed its motion for a dismissal at the close of the evidence, and we think the denial thereof was also error, and its exception thereto was well taken.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.