LEHMAN, Respondent, vs. AMSTERDAM COFFEE COMPANY, Appellant.

*April 8—May 2, 1911.*

*Negligence: Safety of premises: Open stairway in store: Injury to customer: Liability: Contributory negligence: Damages: Evidence: Lost profits: Appeal: Reducing award.*

1. One who invites another upon his premises, either expressly or impliedly, is liable if, without warning, he leaves there a snare or trap into which the invited person falls while exercising ordinary care.

2. An ordinary open stairway or hatchway in the storage part of a store is so usual a thing that it could hardly be called a trap or snare even to an invitee.

3. But where such a stairway, opening from the rear end of a store, was surrounded on two sides by piles of merchandise higher than the railing, and on one side by shelving, so that the opening in the floor could not be seen, and there was nothing to suggest its presence except as one approached it from such rear end, these were circumstances from which a jury might properly find that, in the exercise of ordinary care, warning of

its existence should have been given to a customer who at dusk had followed a clerk to that part of the store by express or implied invitation.

4. Although there was sufficient light to see the opening if one's attention were directed to it, yet where the customer was invited to the very verge of the opening for the purpose of examining goods on the shelves, and was left there without warning while her mind was occupied with this purpose, the court cannot say as matter of law that she was guilty of contributory negligence in failing to see it.

5. Where a person running an established business, dependent on his own exertions, is disabled through another's negligence, the character and size of the business, the capital and labor employed, the extent of his own services therein, and the profits of the business may be shown, not for the purpose of recovering the profits, but simply to throw light on the plaintiff's earning capacity.

6. Where, however, the plaintiff was a laundress with several assistants who carried on the business after her injury, and her estimate of the profits was a mere guess, based upon no books or memoranda, such evidence of profits was not admissible.

7. Where it has been determined without prejudicial error that plaintiff is entitled to recover some damages, the supreme court may, on reversing the judgment for error in the admission of evidence or in the charge by which the award was increased, name a sum which plaintiff may accept and terminate the litigation, being guided by the rule that it should name a sum as low as a jury would in all reasonable probability have given had the error not occurred.

8. Where plaintiff's business, a small hand laundry, was carried on by her employees during the five or six weeks of her disability, and her injuries consisted of a fracture of the right arm at the wrist and a fracture of the humerus at the shoulder, resulting in a slight permanent impairment of the strength of the arm, a slight shortening of it, and some restriction of motion in the shoulder, an award of $1,750 is *held* excessive, and is reduced by the supreme court to $1,000.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge.    *Reversed.*

Action for personal injuries.    The plaintiff, a laundress by occupation, sixty-five years of age, fell down an open stairway in the back part of the defendant's coffee, tea, and food store

in the city of Milwaukee, and suffered serious injuries. She claimed negligence in leaving the stairway open and unguarded and in failing to warn her of its existence. The jury returned the following special verdict:

"(1) Was the plaintiff injured by falling into an open stairway in defendant's store, on October 8th, 1908? A. (by court). Yes.

"(2) Did the plaintiff go to the southeastern portion of defendant's store, where the open stairway was situated, at the invitation of Miss Lena Orth, either express or implied? A. (by court). Yes.

"(3) Ought the clerk, Lena Orth, in the exercise of ordinary care, to have reasonably apprehended that the open stairway was likely to become dangerous to the plaintiff when exercising ordinary care, in that part of the store, under the circumstances existing at the time of the accident? A. Yes.

"(4) If you answer the third question 'Yes,' ought the clerk, Lena Orth, in the exercise of ordinary care, to have warned the plaintiff of the open stairway, under the circumstances existing at the time of the injury? A. Yes. .

"(5) If you answer the fourth question 'Yes,' was the failure of Miss Lena Orth to warn the plaintiff of the stairway opening the proximate cause of the injury? A. Yes.

"(6) Ought the plaintiff, in the exercise of ordinary care, to have seen the stairway opening before the accident, in time to have avoided the injury? A. No.

"(7) Was the plaintiff guilty of a want of ordinary care which proximately contributed to the injury? A. No.

"(8) At what sum do you assess plaintiff's damages? A. $1,750."

Motions by the defendant to change the answers to the sixth and seventh questions, for judgment upon the verdict as so changed, and to set aside the verdict and grant a new trial, were successively overruled, and judgment rendered for the plaintiff, from which the defendant appeals.

For the appellant there was a brief signed by *Alford Klingelhoefer,* and oral argument by *Mr. Klingelhoefer* and *Mr. Lynn S. Pease.* They cited, among other authorities, 29 Cyc.

452; *Wilkinson v. Fairrie,* 9 Jur. N. S. 280; *Schmidt v. Bauer,* 80 Cal. 565, 5 L. R. A. 580; *Trask v. Sholwell,* 41 Minn. 66, 42 N. W. 699; *Glaser v. Rothschild,* 106 Mo. App. 418, 80 S. W. 332; *Pierce v. Whitcomb,* 48 Vt. 127; *Peake v. Buell,* 90 Wis. 508, 514, 63 N. W. 1053; *Goeltz v. Ashland,* 75 Wis. 642, 645, 44 N. W. 770; *Gaffney v. Brown,* 150 Mass. 479, 23 N. E. 233; *Cowen v. Kirby,* 180 Mass. 504, 62 N. E. 968; *Ryerson v. Bathgate,* 67 N. J. Law, 337, 51 Atl. 708; *Johnson v. Ramberg,* 49 Minn. 341, 51 N. W. 1043; *Hart v. Grennell,* 122 N. Y. 371, 25 N. E. 354; *Massey v. Seller,* 45 Oreg. 267, 77 Pac. 397; *Piper v. N. Y. C. & H. R. R. Co.* 156 N. Y. 224; *Clark v. Fehlhaber,* 106 Va. 803, 56 S. E. 817; *Muench v. Heinemann,* 119 Wis. 441, 446, 96 N. W. 800; *Bierbach v. Goodyear R. Co.* 54 Wis. 208, 11 N. W. 514.

For the respondent there was a brief by *Hugo J. Trost,* attorney, and *Churchill, Bennett & Churchill,* of counsel, and oral argument by *Mr. Trost* and *Mr. W. H. Churchill.*

WINSLOW, C. J. There is very little material dispute as to the facts of the accident. The defendant's store is about eighty feet long and faces west. The rear half of the store is used for storage of coffee, tea, and other goods, and not for the reception of customers. In the extreme southeast corner is an open stairway in the floor, entered from the east, and surrounded on the north and west by a railing somewhat less than three feet in height, and on the south by the south wall of the store, upon which there was shelving. Around this railing on the north and west were piled bags of coffee, boxes of cocoa, and other merchandise from three to four and one-half feet in height, practically concealing it from view. The stairway was about two feet and one-half wide. The store was lighted by an arc light twelve feet from the floor, hanging near the middle of the store about thirty feet from the east end of the stairway. The plaintiff entered the store at dusk

October 8, 1908, to buy a lamp chimney. She had traded at the store before and knew the clerk, but testified that she did not know of the existence of the stairway or see it. She went to the cashier's desk and stated her want to the cashier, Lena Orth, and testified that Miss Orth told her to come along with her. Miss Orth testified that after the plaintiff stated that she wanted a lamp chimney she (Miss Orth) said, "All right, I will get one for you;" that she got up from her chair and plaintiff said she didn't have her burner along, but if she saw the chimney she would know the kind she wanted; that she (Miss Orth) then started to walk to the back of the store, and plaintiff was right back of her talking to her and telling her about how the chimney was broken; that plaintiff followed her to the extreme rear of the store to a point a few feet east of the open stairway, where lamp chimneys were kept on shelves along the east and south walls; that she got one chimney down and plaintiff told her it was not the right kind, and that then she wanted to get down some other chimneys from shelves immediately south of the opening of the stairway, and couldn't reach them, so she said to plaintiff, "Wait here till I get a chair," and started to go back to the middle of the store to get a chair or stepladder, and as she was just getting the chair she heard a scream and plaintiff had fallen down the stairway.

If plaintiff's version of the transaction be true, there was an express invitation; if Miss Orth's version be true, there was an implied invitation to go to the back part of the store to a place close to the stairway, and the trial court was entirely right in answering the second question affirmatively. Plaintiff testified that she did not see the stairway or hole in the floor; that she was looking up at the shelves to see the lamp chimneys; that Miss Orth left her standing there close to the stairway and went away; that she (plaintiff) waited a few minutes for Miss Orth to come back, and then turned around to go and find her, and as she turned around fell down the open stairway.

The trial court was quite right in concluding that the mere fact that the stairway was open and unprotected would not sustain a finding of negligence. It was in a part of the store not intended for the use of customers, but simply for storage. Unless express or implied invitation was given to a customer to go there, he had no business there. So the only claim of negligence which could be made here was the claim that, having invited the customer to the immediate proximity of the unprotected stairway, it was his duty to warn her of its existence.

The rule is familiar that where one invites another upon his premises he cannot without warning leave a snare or trap there into which the invited person falls while exercising ordinary care, and escape liability therefor. *Barowski v. Schulz,* 112 Wis. 415, 88 N. W. 236. We should be slow to say that an ordinary open stairway or hatchway in the storage part of a store could be called a trap or snare, even to an invitee. It is common knowledge that such places are very usual, and doubtless every person of full age should anticipate their existence; but the circumstances here are very much out of the ordinary. The stairway was surrounded on two sides with piles of merchandise as high or higher than the rail, and on one side by shelving. The evidence seems to be ample to show that in approaching it from the front of the store there would be no sign or indication of a stairway, and that only as one came practically to the opening itself from the east was it possible to see it, or anything suggesting the existence of an opening in the floor. The jury might, we think, well say from the evidence that it was a trap or snare of whose existence under the circumstances the rules of ordinary care would require that an invited person be warned.

The same considerations apply to the claim that the plaintiff was guilty of negligence as matter of law in not seeing the stairway. It is true there was light enough in the store to see the opening if the attention of a person were directed to it,

but when, as the evidence tends to show, the plaintiff was invited to the very verge of the opening for the purpose of examining goods on the shelves, and was left there while her mind was occupied with this purpose, with all the outward indications of the existence of a stairway concealed, we do not feel that a court can say as a matter of law that it was negligence not to see it.

Passing two minor contentions concerning the form of the verdict and the charge of the court, which are so manifestly untenable that they require no discussion, we come to the question of the damages, and these we regard as too large. The plaintiff was a laundress operating a small hand laundry, and employing a woman and two girls to assist her. Her business was not stopped by reason of the accident, but was carried on by her employees. She was confined to the bed about five or six weeks, and then was able to get up and very soon returned to her work. Her injuries consisted of a fracture of the right arm at the wrist and a fracture of the humerus at the shoulder, and some bruises upon the hip and right side. There is some permanent impairment of the strength of the arm and a slight shortening of it, and the shoulder is restricted somewhat in motion. She was allowed to testify that prior to the accident the profits in her business were from $10 to $15 per week, and that after the accident she lost a lot of customers because the work was not done properly. She kept no books of account, nor cash book, nor bank account. She afterwards admitted that she did not know whether she took in $25 or $35 per week, and that she could not name a customer that she lost.

It has been held by this court that where a person who is running an established business dependent on his own exertions is disabled by another's negligence, the character and size of the business may be shown, the capital and labor employed, and the quality and amount of his own services therein, as well as the profits of the business, not for the purpose of recovering the profits, but simply to throw light on the

quality and value of the plaintiff's earning capacity. *Heer v. Warren-Scharf A. P. Co.* 118 Wis. 57, 94 N. W. 789; *Muench v. Heinemann,* 119 Wis. 441, 96 N. W. 800. All of the elements above named are essential in order to justify the admission of proof of the profits, and where, as in the present case, it appears that the estimate of profits is a mere guess, with no books or memoranda to base it on, the evidence of profits should not be admitted, or if admitted should be stricken out. It is very evident that if the plaintiff does not know whether her business was $25 or $35 a week before the accident, and if she kept no account of it of any kind, her statement as to profits made is the merest conjecture.

It is true that the charge of the trial judge on the subject of damages was practically correct, and that he told the jury that they should disregard the testimony as to the loss of customers, because it was too vague and uncertain to support the claim; but the baseless conjecture as to profits was still in the case, and in view of the size of the verdict we cannot resist the conclusion that it must have materially influenced the jury in their deliberations.

It has been determined without prejudicial error that the plaintiff is entitled to recover some damages. Under such circumstances, where there has been error in the reception of evidence or in the charge as to the amount of damages and it appears that the verdict has been increased thereby, this court can, on reversing the judgment, name a sum which the plaintiff may accept and terminate the litigation. In naming such sum the court is guided by the rule that it must name a sum as low as a jury would in all reasonable probability have rendered had the error not occurred.

*By the Court.*—Judgment reversed, and action remanded for a new trial, unless the plaintiff elect, within twenty days after the filing of the *remittitur* in the trial court, by notice in writing served on the defendant's attorney, to take judgment for $1,000 with costs, in which case judgment shall be rendered therefor upon motion in that court.