CAMPBELL, Respondent, vs. SUTLIFF, imp., Appellant.

*May 4—June 20, 1927.*

*Negligence: Invitees: Visitor to automobile storage garage: Independent contractor: Failure of coal dealer to leave premises safe: Damages for personal injuries: Jury: Right of court to change award of damages.*

1. Plaintiff, who was the guest of a hotel and who had stored his automobile in a garage near the hotel, is *held* to have been an invitee when injured in the repair shop of the garage, through which hotel guests customarily went for their cars, since an invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere benefit of the person using it.  p. 372.

2. In this case the garage owner was not liable for the negligence of employees of a coal dealer delivering coal, such dealer being an independent contractor; and since it was the duty of the coal dealer to leave the premises in as safe condition after the delivery of the coal as they were when he found them, his failure to do so constitutes actionable negligence, rendering him liable for the injuries proximately caused thereby.  p. 373.

3. An invitee of a garage, passing through the repair shop on his way to get a car stored in such garage, had the right to presume that the passageway was safe, and was not chargeable with knowledge of an open coal hole of which he had no notice.  p. 373.

4. In a personal injury action by a traveling salesman, the extent of the liability of the wrongdoer depends upon the extent of the injuries suffered, and recovery will not be diminished because plaintiff received a salary from his employer during the period of disability, nor because he received insurance under an accident policy.  p. 374.

5. In such an action, in which the jury's answer to a question requiring them to fix damages for pain and suffering was "None," the action of the court in striking such answer and inserting in lieu thereof the sum of $50, without consent of either party, though error as denying a right to trial by jury, was not prejudicial, where the amount fixed was the least which was warranted by the proof and where plaintiff made no complaint.  pp. 375, 382.

6. The right to a trial by jury which is preserved by the constitution is the right as it existed when the constitution was

Campbell v. Sutliff, 193 Wis. 370.

adopted, and does not prevent the setting aside of verdicts or the granting of new trials on the ground that the jury erred in assessing damages.  p. 375.

7. Such right to a trial by jury on the question of damages can be waived like any other right guaranteed by the constitution. p. 379.

8. The power conferred on the supreme court by sec. 251.09, Stats., to "direct the entry of the proper judgment" must be so construed as not to confer the power to deprive parties, without their consent, of the right to trial by jury as guaranteed by the constitution; and neither the trial court nor the supreme court has the power to do more than to give the parties the option to waive their constitutional right. [The practice of the supreme court in a few recent cases disapproved.]  pp. 381, 382.

9. Where the plaintiff does not appeal, he cannot question the adverse ruling of the lower court on an appeal taken by defendant.  p. 382.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge.  *Affirmed.*

Action by *Hugh Campbell* against *S. D. Sutliff* and Gordon Morgan to recover for personal injuries sustained in the garage of defendant Morgan.  From judgment against defendant *Sutliff* he appealed.

Plaintiff was a traveling salesman who had for a period of years regularly stopped at a hotel in Rhinelander, Wisconsin, whose rear door was directly back of and near to the rear door of the garage of defendant Morgan.  Plaintiff traveled by automobile and always kept his automobile in the Morgan garage.  Plaintiff and other guests of the hotel, as well as the manager of the hotel, customarily went to the Morgan garage to get their cars by going through the rear door of the garage.  The rear door of the garage opened into the repair shop.  In front of this repair shop was the garage proper which was used for the storage of cars.

The accident occurred on a dark November morning. The employees of defendant *Sutliff,* a dealer in coal, were putting coal in the basement of the garage through a hole

in the floor of the repair shop. The plaintiff stepped into this open coal hole and was injured. The jury found that the employees of the garage did not fail to exercise ordinary care in permitting the coal hole to be open and unguarded, and that the employees of *Sutliff* failed to exercise ordinary care for the safety of patrons of the Morgan garage by leaving the coal hole open and unguarded, and that such negligence was the proximate cause of plaintiff's injury.

For the appellant there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith.*

*A. J. O'Melia* of Rhinelander, for the respondent.

STEVENS, J. (1) The case was tried upon the theory that plaintiff was an invitee and entitled to protection as such. Appellant contends that plaintiff was a mere licensee who was obliged to take the premises as he found them and that appellant owed him no duty except that of refraining from active negligence rendering the premises dangerous.

"The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." *Hupfer v. National D. Co.* 114 Wis. 279, 284, 90 N. W. 191. Here there was the common interest or mutual advantage which distinguishes an invitee from a mere licensee. *Greenfield v. Miller,* 173 Wis. 184, 188, 180 N. W. 834; *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 105, 113, 54 N. W. 24. While the plaintiff had no business in the repair shop, he had entered the garage in a way customarily used by guests at the hotel who stored their cars in the garage for the purpose of procuring his car which was stored in the front part of the garage. He was as clearly an invitee as is a customer who enters a store to purchase merchandise. *Lehman v. Amsterdam Coffee Co.* 146 Wis. 213, 217, 131 N. W. 362.

(2) Appellant *Sutliff* was an independent contractor who had the right to control the details of the work of delivering coal. He was responsible to the garage owner only for the result,—the delivery of the coal. The garage owner was not liable for the negligence of appellant's employees. It was the duty of the appellant as an independent contractor to leave the premises in as safe condition as they were when he found them. The verdict indicates that the jury found that the employees of appellant *Sutliff* opened the coal hole and left it open and unguarded. The evidence warrants such a finding. The failure of appellant's employees to leave the premises in as safe a condition as they found them constituted actionable negligence which rendered appellant *Sutliff* liable to the plaintiff for injuries proximately caused by such negligence. *Scott v. Curtis,* 195 N. Y. 424, 88 N. E. 794, 40 L. R. A. N. s. 1147, 1153.

(3) The plaintiff testified that he could not distinguish objects on the floor of the repair shop before he stepped into the coal hole and that he proceeded in practically utter darkness, facing the light of the partially open front doors of the garage. If he had been a mere licensee who was obliged to take the premises as he found them he might have been guilty of contributory negligence. But as an invitee, plaintiff had a right to presume that the passageway was safe and was not chargeable with knowledge of the open coal hole of which he had no notice. *Lehman v. Amsterdam Coffee Co.* 146 Wis. 213, 218, 131 N. W. 362. Therefore he cannot be held guilty of contributory negligence.

(4) The plaintiff's compensation was paid in the form of a commission on all sales made by him. His expenses were paid and he was given a drawing account of $350 a month, which sum was regularly paid to him during the period of his disability following the accident. He was also paid $125 under an accident policy. The appellant contends that the trial court erred in instructing the jury that, in assessing

plaintiff's damages, they should wholly disregard the fact that he had received a payment under an accident insurance policy and also the fact that his employer continued to pay his salary during the time that he was disabled. Appellant contends that plaintiff's damage was measured by the loss in wages or earnings which he actually sustained and that plaintiff cannot be heard to claim that he sustained loss in wages or earnings because his employer continued to pay his regular wage or drawing account during all the time that he was disabled.

The position taken by appellant finds support in the decisions of the courts of some of the states, but it "seems to be the prevailing doctrine in this country that where the salary of an injured person is continued by his employer during the time of his inability to perform services, such payment is no ground for diminution of the damages to be paid by the one who has caused the injury." *Cunnien v. Superior Iron Works Co.* 175 Wis. 172, 188, 184 N. W. 767.

We see no reason why one whose acts have caused injury to another should reap the entire benefit that comes from the payment of wages made by an employer, either as a gratuity to a faithful employee or because such payments are required by contract. Such payments do not change the nature of the injury which the employee sustains through the wrongful acts of the tortfeasor. If either is to profit by the payments made by the employer, it should be the person who has been injured, not the one whose wrongful acts caused the injury. The extent of the liability of the wrongdoer is dependent upon the extent of the injuries inflicted by his wrongful act, not upon the question whether the employee receives wages during disability from his employer.

It is equally clear that the defendant is not entitled to have the damages reduced because the plaintiff had purchased and

paid for the right to have indemnity in case he sustained accidental injuries. The sums paid for such insurance are in the nature of an investment, which, like other investments made by the plaintiff, ought not to inure to the benefit of the defendant. The only parties interested in such a contract of insurance are the plaintiff and the insurer. *Gatzweiler v. Milwaukee E. R. & L. Co.* 136 Wis. 34, 39, 116 N. W. 633.

The decisions of this court are in accord with the majority of the courts of the country in adopting the rule stated by the learned trial judge in his instructions to the jury. *Gatzweiler v. Milwaukee E. R. & L. Co.* 136 Wis. 34, 37–39, 116 N. W. 633; *Cunnien v. Superior Iron Works Co.* 175 Wis. 172, 188, 184 N. W. 767; *Wasicek v. M. Carpenter B. Co.* 179 Wis. 274, 278, 191 N. W. 503.

(5) The jury's answer to the question which required them to fix the amount of damages assessed for pain and suffering was "None." The proof establishes without controversy that the plaintiff is entitled to recover damages for pain and suffering. The trial court was of the opinion that had the jury not misunderstood its duty it would have assessed "at least the sum of $50" as compensation for pain and suffering. The court therefore struck out the answer "None" and inserted in lieu thereof the sum of $50 and entered a judgment which included this sum of $50 as damages.

This judgment therefore presents the question whether such an order, whereby damages are assessed by the court in a case triable by jury, violates the constitutional mandate that "the right of trial by jury shall remain inviolate." The right that is preserved by this constitutional provision is the right to trial by jury as it existed when the constitution was adopted. *State ex rel. Schumacher v. Markham,* 160 Wis. 431, 436, 152 N. W. 161. The power of the court to set aside verdicts and to grant new trials on the ground that the

jury had erred in assessing damages was firmly established before the formation of the United States and therefore long before the constitution of Wisconsin was adopted.

Early in the history of English procedure this right was exercised through the attaint of the jury whose verdict was questioned. This practice prevailed down to the time when the memorable decision of Chief Justice VAUGHAN in *Bushell's Case,* Vaughan, 135, 6 How. St. Tr. 999, put an end to the barbarous and excessive punishment that had been imposed upon jurors whose verdicts were attainted. In place of the attaint as a means of correcting erroneous verdicts came the practice of setting aside verdicts because of the misconduct of jurors, which was gradually extended to include the power to set aside verdicts when the only misconduct consisted of rendering verdicts contrary to the law or to the evidence in the case. This power was fully established as early as the eighteenth century.

Because the zeal of the courts to obey the constitutional mandate to give a remedy for all wrongs "promptly and without delay" has led courts to encroach upon the domain of the jury in the trial of issues of fact, which were determined solely by the jury when the constitution was adopted, it becomes necessary to examine the history of the growth of the power of the courts of Wisconsin in dealing with verdicts which assessed either excessive or inadequate damages.

This court early recognized that the practice of remitting a part of damages assessed by the jury "where the illegal part is clearly distinguishable from the rest, and may be ascertained by the court without assuming the functions of the jury and substituting its judgment for theirs, is well settled." *Nudd v. Wells,* 11 Wis. 407, 415.

This rule has been frequently applied in cases where the excess was clearly ascertainable, as where interest or attorney's fees were erroneously allowed or where the recovery was in excess of the limit fixed by statute. *Wylie*

*v. Karner,* 54 Wis. 591, 599, 12 N. W. 57; *Potts v. Cooley,* 56 Wis. 45, 50, 13 N. W. 682; *Menz v. Beebe,* 102 Wis. 342, 350, 351, 77 N. W. 913, 78 N. W. 601; *Keeley v. Great Northern R. Co.* 139 Wis. 448, 455, 121 N. W. 167.

But where the damages were unliquidated, as in tort cases, the court early expressed the opinion that to affirm a judgment if excessive damages were remitted would "substitute its judgment for that of the jury." But in that case the court clearly recognized the well established power of the court to determine the limit beyond which the jury, could not go in the assessment of damages when it said that upon a new trial ";a verdict exceeding $2,000 ought to be set aside by the court." *Potter v. C. & N. W. R. Co.* 22 Wis. 615, 620. This rule is the basis of all the decisions that have developed the power of the court to deal with excessive damages or inadequate verdicts. These later cases have simply made the rule of the *Potter Case* "sufficiently elastic to enable the court, in a proper case, to relieve the plaintiff from the delay and expense of another trial, when the only fault in the verdict" is in the assessment of damages. *Baker v. Madison,* 62 Wis. 137, 152, 22 N. W. 141, 583.

In 1882 this court held "that, in actions of tort as well as contract, where the damages are clearly excessive, the trial judge may either grant a new trial absolutely, or give the plaintiff the option to remit the excess, and, in case he does so, order the verdict to stand for the residue. Certainly the practice will tend to promote justice and lessen the expense to litigants and the public. Besides, the allowance of such option is no more an exercise of arbitrary power by the trial judge than it would be for him to set aside a verdict absolutely upon the sole ground that it is excessive." *Corcoran v. Harran,* 55 Wis. 120, 127, 128, 12 N. W. 468. "The practice of thus curing errors going only to the amount of damages is constantly broadening in the interest of justice

and public economy." *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 334, 80 N. W. 644.

Under this constantly broadening practice there has been extended to the defendant, as well as to the plaintiff, the right to elect to terminate the litigation by consenting to the entry of judgment against him. "The practice of treating fatally defective verdicts,—the right to recovery being unquestioned,—so as not to prejudicially invade the rights of either party and yet terminate the litigation without the expense of another trial, is in the interests of public and private justice. It is a great boon to the parties directly interested, and to the public as well, upon whom in a great measure the burden of judicial administration rests. . . . That rule with a legitimate basis therefor has been evolved in the course of years of judicial administration as a most valuable means of 'promptly and without delay' terminating disputes between parties to the end that, so far as due course of law will permit, wrong may be remedied or prevented without that financial exhaustion which tends to make men surrender valuable rights rather than to persist in efforts to secure them by legal means." *Heimlich v. Tabor*, 123 Wis. 565, 570, 571, 102 N. W. 10.

It will be noted that all of the Wisconsin cases cited above carefully preserve the right of the parties to have the amount of the verdict fixed by the jury, but subject always to the control over the amount which the court possessed at the time that the constitution was framed. This exercise by the court of the power to limit the amount of damages that may be assessed by a jury is not an invasion of the constitutional right to trial by jury because that power on the part of the court was a part of the trial by jury which the constitution declared shall remain inviolate. Indeed it may be doubted if trial by jury would have survived the centuries if it had not been subject to such control by the courts. 1 Holdsworth's History of English Law, 321.

Campbell v. Sutliff, 193 Wis. 370.

When the court grants the option to take judgment for the sum which the court determines to be the least amount which a jury could assess under the proof, the plaintiff cannot complain that he has been deprived of his right to trial by jury because he cannot question a judgment which has been entered because he elected to accept judgment for that amount. While some courts question the right to enter judgment for the plaintiff for such reduced amount, without the consent of the defendant, this court holds that "it is evident that the reduction was a favor to the defendant, of which he has no right to complain. Certainly a party against whom a judgment has been recovered cannot reverse it on the ground that it is less than it should have been." *Corcoran v. Harran,* 55 Wis. 120, 128, 12 N. W. 468. The defendant's constitutional rights are not invaded because the judgment is reduced to the least amount which the plaintiff may recover as determined by the court that has the power to fix the minimum amount that may be recovered,— the smallest verdict which the court will permit to stand.

Conversely neither party can complain when the defendant elects to consent to the entry of judgment for the sum which the court determines to be the largest amount which a jury could assess under the proof. The defendant cannot question the judgment because he has elected to have it entered. The plaintiff cannot question it because it is for the largest amount which the court will permit the jury to assess under the proof of the case. Thus it will be seen that the court is acting within the scope of the powers possessed by it in trial by jury as guaranteed by the constitution and that neither party is deprived of his constitutional right to a trial by jury without his consent. The right to a jury trial on the question of damages can be waived like any other right guaranteed by the constitution. It is waived by the party that elects to have judgment entered in accordance with the option given him by the court. "No reason is per-

ceived for retracing judicial footsteps as to that practice, and no reason for apologizing for its existence, while the reasons are many for more thoroughly intrenching it on a logical basis that will meet all criticism, if that has not heretofore been done. It is believed that the one already established here satisfies that essential. That requires the sum imposed upon the defendant, whether he consents or not, giving the option to the plaintiff, to be as small as an unprejudiced jury would probably name; and the sum to be imposed upon the plaintiff, whether he consents or not, giving the option to the defendant, to be as large as an un-prejudiced jury on the evidence would probably name. This court has, in recent years at least, in dealing with such ver-dicts endeavored consistently to follow that course, deeming it the only one pursuable, consistent with the principle that the right of jury trial should not be judicially invaded." *Heimlich v. Tabor,* 123 Wis. 565, 571, 102 N. W. 10.

The rule which we have been discussing is "at most but an application of well-known and established principles to new situations. But, if it shall appear to be an extension of such principles, it should not be taken as indicating a tendency to invade or narrow the functions of the jury, but rather as indicating that our jurisprudence is still developing toward that ideal of perfection where the administration of the law is truly the administration of justice." *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 336, 80 N. W. 644.

But in the case at bar the court has gone outside the realm of established practice and assessed the damages for pain and suffering as a jury might have done and entered judgment for such amount without giving either party the option to consent to the entry of such judgment or to sub-mit to a new trial. Where damages in tort have been as-sessed by a jury, no court, upon a motion for a new trial, "is authorized, according to its own estimate of the amount of damages which the plaintiff ought to have recovered, to

enter an absolute judgment for any other sum than that assessed by the jury." *Kennon v. Gilmer,* 131 U. S. 22, 29, 9 Sup. Ct. 696, 33 Lawy. Ed. 110, 113, 114. Such an order clearly invades the province of the jury and deprives one or perhaps both of the parties of their constitutional right to a trial by jury. Under such an order the consent of the party that is deprived of the jury trial is wholly lacking. It is this waiver of the constitutional right by the party that consents to the entry of judgment that saves the established practice of giving the option to consent to the entry of judgment from condemnation under the constitutional guaranty of jury trial.

The trial court was doubtless led to adopt this practice by the fact that this court, moved by the desire to avoid reversals and the necessity of new trials, had adopted the same practice in a few recent cases, among which may be noted *Karsteadt v. Phillip Gross H. & S. Co.* 179 Wis. 110, 117, 190 N. W. 844; *Wasicek v. M. Carpenter B. Co.* 179 Wis. 274, 278, 191 N. W. 503; *Berghammer v. Mayer,* 189 Wis. 197, 203, 207 N. W. 289; *Rogers v. Lurye F. Co. post,* p. 496, 211 N. W. 782, 784, 215 N. W. 487.

The court is satisfied after a careful study of the cases and of the constitutional provision in the light of the history of its origin and establishment that neither the trial court nor the appellate court has the power to do more than to give the parties the option to waive their constitutional right to a trial by jury, and that, if such consent is not given, the sole power possessed by the court is to order a new trial in all cases where the damages assessed by the jury are either excessive or inadequate in which the proper amount of the verdict has to be determined upon some basis which fairly takes the judgment of the jury for the guide instead of the independent judgment of the court. This rule has no application to cases where the amount added to or subtracted from the verdict is clearly and definitely established by the

proof.   The power conferred upon the supreme court by sec. 251.09 of the Statutes to "direct the entry of the proper judgment" must be so construed as not to confer upon this court the power to deprive parties of the right to trial by jury as guaranteed to them by the constitution.

But it does not follow, that prejudicial error was committed in this case.   The trial court fixed the recovery for pain and suffering at the least amount which is warranted by the proof.   In doing so appellant's rights were protected. Plaintiff's right to recovery being established, the appellant cannot complain because the trial court has fixed damages at a sum which is the least amount which could be assessed by a jury.   The plaintiff is the only party that could complain because he was not given the option of a new trial if he did not elect to take the least amount of damages which any jury could assess under the proof.   But the plaintiff has not appealed and cannot question this ruling of the court.

*By the Court.*—Judgment affirmed.