Schoenfeldt, Individually and as Administrator, Appellant,
v. Babcock and wife, Respondents.

*February 2—March 2, 1965.*

572

For the appellant there was a brief by *Charles W. Sturm, Charles E. Nicoud,* and *Charles Saggio,* all of Milwaukee, and oral argument by *Mr. Saggio.*

For the respondents there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *Robert E. Cook* and *Francis R. Croak* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

GORDON, J. The trial court granted a nonsuit at the close of the plaintiff's case, and we must determine whether such ruling was proper. Upon a motion for nonsuit, the evidence is to be viewed in a light most favorable to the plaintiff, and the plaintiff must also be given the benefit of the most-favorable inferences which can be deduced from the evidence. *Bartz v. Braun* (1961), 14 Wis. (2d) 425, 427, 111 N. W. (2d) 431; *Lake Mills v. Veldhuizen* (1953), 263 Wis. 49, 51, 56 N. W. (2d) 491.

There are three principal matters which we will discuss: (1) Does the safe-place statute apply? (2) was there a duty on the part of Mrs. Babcock to issue a warning to Mrs. Schoenfeldt? and (3) was there negligence because the hall light was not shaded and was located so as to blind an invitee?

The appellant has pointed out that a presumption of due care attended the deceased Mrs. Schoenfeldt. However, the deceased's entitlement to a presumption of due care may not be translated so as to create a presumption of negligence on the part of the defendants. The nonsuit was not based on the extent of Mrs. Schoenfeldt's negligence, but, rather, it was based on the absence of adequate proof as to the Babcocks' negligence. Accordingly, no further discussion of this presumption is necessary in this opinion.

Another proposition advanced by the appellant relates to the liability of Edward Babcock. In view of our conclusion that his wife, Janis Babcock, was entitled to a nonsuit, it follows that Edward Babcock is also entitled to the benefit of such ruling. No useful purpose would be served by our

exploring the question of his liability, since it is apparent that his liability rests on weaker grounds than that of his wife.

## Applicability of Safe-Place Law.

The trial court determined that the safe-place law does not apply to the instant case, and we agree with this conclusion. The Babcock property was not a "place of employment" within sec. 101.01 (1), Stats. The statute describes such a place as one where "temporarily or permanently any industry, trade or business is carried on" *and* "where any person is, directly or indirectly, employed by another for direct or indirect gain or profit."

The plaintiff offered no proof as to the frequency with which Mrs. Babcock carried on rummage sales at her home. Under the reasoning of *Cross v. Leuenberger* (1954), 267 Wis. 232, 65 N. W. (2d) 35, 66 N. W. (2d) 168, if this were a solitary sale or even an occasional event, it would not constitute a trade or business within the meaning of sec. 101.01 (1), Stats.

The *Cross Case,* at page 235, also establishes that the statutory definition of a place of employment requires not only the conduct of a trade or business but also the employment of one person by another. The record is devoid of a showing that any person was employed by another in connection with the rummage sale. The fact that Mrs. Babcock testified that her husband and some friends were "interested" in the rummage sale falls far short of showing the existence of employment.

## The Failure to Warn.

Mrs. Babcock led the way as Mrs. Schoenfeldt followed her into the house. Mrs. Babcock said, "Follow me," but she did not caution her with reference to the physical arrange-

ment of the platform and the basement stairs. The appellant contends that, as an invitee, Mrs. Schoenfeldt was entitled to a warning of an unsafe condition or a hidden peril and that the failure of Mrs. Babcock to give such warning was a factor which the jury could have held to constitute negligence.

The appellant relies upon *Lehman v. Amsterdam Coffee Co.* (1911), 146 Wis. 213, 131 N. W. 362, in which case the entrance to the stairway was surrounded by store merchandise which was piled to heights of three to four and one-half feet. The court observed, at page 216, that the piling of merchandise practically concealed the stairway from view. The court went on to state, at page 218:

"The rule is familiar that where one invites another upon his premises he cannot without warning leave a snare or trap there into which the invited person falls while exercising ordinary care, and escape liability therefor. *Barowski v. Schulz,* 112 Wis. 415, 88 N. W. 236. We should be slow to say that an ordinary open stairway or hatchway in the storage part of a store could be called a trap or snare, even to an invitee. It is common knowledge that such places are very usual, and doubtless every person of full age should anticipate their existence; but the circumstances here are very much out of the ordinary. The stairway was surrounded on two sides with piles of merchandise as high or higher than the rail, and on side by shelving. The evidence seems to be ample to show that in approaching it from the front of the store there would be no sign or indication of a stairway, and that only as one came practically to the opening itself from the east was it possible to see it, or anything suggesting the existence of an opening in the floor. The jury might, we think, well say from the evidence that it was a trap or snare of whose existence under the circumstances the rules of ordinary care would require that an invited person be warned."

In our opinion, the facts in the instant case are not comparable to the *Lehman Case;* there was no aspect of a

trap in the instant case which could have created a duty on the part of Mrs. Babcock to give a warning.

The appellant also cites *Campbell v. Sutliff* (1927), 193 Wis. 370, 214 N. W. 374, which involved an unguarded open hole in the floor of a public garage through which coal could be stored in the basement. An invitee fell into the hole; the coal dealer, who had opened the hole and left it in that condition, was held responsible.

In our opinion, there is no reasonable analogy between such an unguarded hole in the floor and an ordinary stairway which leads to a basement from a back-hall platform. A person of average intelligence would not expect to encounter an unguarded open coal hole in a public building; on the other hand, stairs are a common and ordinary means of going from one floor to another, and they are present in millions of households. A householder is not under a legal duty to warn of the presence of regular stairs unless, by reason of special circumstances, such stairs are secreted, camouflaged or otherwise situated so as to constitute a trap; under no reasonable interpretation can this be said to apply to the physical arrangements at the Babcock household.

### Was There an Unsafe Condition?

In *Schlicht v. Thesing* (1964), 25 Wis. (2d) 436, 441, 130 N. W. (2d) 763, this court stated:

"The owner of premises owes his invitee the alternative duty of either having his premises in a reasonably safe condition or of giving the invitee adequate and timley warning of latent and concealed perils which are known to the owner but not to the invitee."

Can it be said that the premises were unsafe because of the smallness of the platform in the back hallway and the presence of an unshielded light? It is claimed that the deceased may

have become blinded by the 75- or 100-watt bulb which hung just above eye level over the second stair of the stairway leading to the basement. The appellant points to the fact that this light bulb was not covered by a reflector or any other means of shading and that this light may have blinded Mrs. Schoenfeldt.

The absence of adequate lighting facilities has been held by this court to be the basis upon which negligence could be predicated. *Schlicht v. Thesing, supra.* It is more difficult to ascribe negligence to the *presence* of light. If this were not an ordinary light bulb but were, for example, a floodlight aimed directly at a person entering the door, negligence could reasonably be based upon a claim of a blinding effect. In *Waterman v. Heinemann Brothers Co.* (1938), 229 Wis. 209, 282 N. W. 29, the claim was made that the plaintiff was blinded by two 200-watt lights, and the court said, at page 212:

"Under the undisputed evidence as to the lighting of the stairhead we consider that the plaintiff's claim of being blinded by light is in conflict with the physical facts and is utterly incredible."

Under the facts of the instant case, there is no credible evidence which would permit a finding that Mrs. Schoenfeldt was blinded by the light in question. This is true even though Mr. Schoenfeldt claimed that he was blinded by the light shortly after the accident. It does not follow that his wife had been so affected; the jury would have to speculate whether she was affected by the light in the same manner that her husband claimed to have been. See also *Boyd v. Logan Jones Dry Goods Co.* (1937), 340 Mo. 1100, 104 S. W. (2d) 348.

The presence of this ordinary, unshaded 75- or 100-watt bulb mounted in the Babcocks' back hallway slightly above eye level did not, under the circumstances, constitute an

unsafe condition. This is particularly true because the evidence further establishes that there was an additional light at the bottom of the stairs. The trial court was correct in concluding that upon this record the stairs were in open and plain sight, and no credible evidence exists from which a reasonable inference of negligence could be drawn.

*By the Court.*—Judgment affirmed.