FEATHERLY and wife, Plaintiffs-Respondents, v. CON-
TINENTAL INSURANCE COMPANY, Defendant: HARD-
WARE DEALERS MUTUAL FIRE INSURANCE COMPANY,
a/k/a SENTRY INSURANCE COMPANY, Defendant and
Third-Party Plaintiff-Appellant. MUTUAL SERVICE
CASUALTY INSURANCE COMPANY, Third-Party De-
fendant-Respondent.

*No. 704 (1974). Submitted on briefs May 5, 1976.—
Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 806.)

For the appellant the cause was submitted on the briefs
of *Richard S. Gibbs, Clay R. Williams, John W. Hein*
and *Gibbs, Roper & Fifield,* all of Milwaukee.

For Mutual Service Casualty Insurance Company the
cause was submitted on the brief of *Hanlin J. Hayes,
Peter J. Stange* and *Hayes & Hayes,* all of Milwaukee.

For the plaintiffs-respondents the cause was submitted
on the brief of *Daniel F. Aschenbrener* and *Aschen-
brener & Koenig, S. C.* of Shawano.

HEFFERNAN, J. Clyde Featherly was injured in an
automobile accident on January 29, 1970. His injury

was sustained when the vehicle ahead of him had a head-on collision with an oncoming automobile. That oncoming vehicle apparently then went into Featherly's path of travel, and Featherly sustained severe injuries. The two other drivers were killed. The vehicle he was following at a distance of 100 to 175 feet was driven by Lee Ann Ward.

The trial resulted in an apportionment of 85 percent of the negligence to May L. Chadwick, the driver of the oncoming vehicle, 5 percent to the defendant Ward, and 10 percent to Featherly.

Featherly was awarded $55,000 for pain, suffering, and disability; $100,000 for the loss of earnings and earning capacity; and $3,500 for medical expense. Featherly's wife was awarded $25,000 for loss of society.

On motions after verdict, the award to Featherly's wife was reduced to $10,000, and the award for medical expenses was reduced to $2,815.80. The balance of the verdict was approved by the trial judge, judgment was entered, and defendants appeal.

We conclude that, in its negligence aspects, the trial was free of prejudicial error. We are also satisfied from the record that the award for personal injuries in the amount of $55,000 was supported by the evidence. We conclude, however, that the jury was permitted to speculate in respect to the award made for loss of earnings. We affirm the judgment, except as it relates to the loss of earning capacity. We reverse the judgment in that respect and remand the cause for a new trial on that issue only.

As we view the case, the facts of the accident are unimportant on the principal issue of whether the jury, under the evidence, could properly make the finding it did for loss of earning capacity.

There is no doubt from the entire record that the plaintiff sustained severe, permanent, and disabling injuries, which affected his past and future earning capacity. The question is, however, whether the evidence submitted was sufficiently probative and free from prejudicial error to permit the jury to make a finding on this element of the damages.

Exhibit 165 was submitted by the plaintiff to prove the earning capacity before and after the accident. That exhibit was a summary of information contained in the partnership returns of a logging partnership operated by Featherly and his wife. The compilation covers the period from 1969 to 1973. It shows that the net profits of the business dropped from almost $12,000 in 1969 to an estimated loss of almost $4,000 in 1973. A net profit of approximately $4,000 was shown in 1972, but losses of $12,000 and more than $18,000 per annum are shown for the years 1970 and 1971, respectively.

Defendants objected to the admission of this document at trial and argue that it was inadmissible.

We conclude that the document was not inadmissible *per se*, for it was, to some degree, probative on the only question before the jury—the loss of the earning capacity of Featherly—but it was not sufficiently probative for the jury to use as the basis for the award.

The record shows that the profit and loss picture of the partnership was affected to a considerable extent by the ability of Featherly to work. However, the loss of profits from a business are not, in the usual case, sufficient to provide a foundation for a jury conclusion in respect to the value of personal services or the value of the loss of earning capacity for one engaged in the business.

Unless a clear causal connection is shown between the loss of profits of a business and a loss of the ability to perform work by one employed in that business, the loss

of profits is an insufficient basis for the jury to make an award of damages. We find the evidence insufficient here; and without a proper foundation, the jury should not have been permitted to make the award.

We summarized the Wisconsin law in respect to awards for loss of earning capacity in *Ianni v. Grain Dealers Mut. Ins. Co.* (1969), 42 Wis. 2d 354, 364, 166 N. W. 2d 148. Therein this court said:

" 'One who is injured in his person may recover for any consequent . . . loss or diminution of his earning capacity. . . .

" 'The proper element of damages in such cases is loss of earning power; that is, the permanent impairment of the ability to earn money. . . .

" 'The burden is on the plaintiff to establish to a reasonable certainty the damages sustained.

" 'The jury is not allowed to speculate . . . .

" '. . . mere proof of a permanent injury is not conclusive evidence of impairment of future earning capacity . . . .

" 'There is no fixed rule for estimating the amount to be recovered for loss or diminution of future earning capacity. . . .

" 'The process of ascertaining the amount of compensation to be awarded requires (1) the determination of the extent to which such capacity has been diminished, and (2) the fixing of the amount of money which will compensate for the determined extent of impairment.

" 'The extent of the diminution or impairment of earning capacity is generally to be arrived at by comparing what the injured party was capable of earning at or before the time of the injury with what he was capable of earning after it occurred. . . .' "

While there may be an award for the loss of earning capacity measurable by loss of salary, if such salary is truly a measure of earning capacity, a more difficult problem is presented where one is self-employed and derives his income from the profits of a business. Where

there is a personal injury, tort law in Wisconsin does not compensate for loss of profits *per se*. Loss of profits is appropriate only if there is a clear causal relationship to the value of the earning capacity. Loss of profits is not in itself, under the circumstances here, admissible as a separate element of damages or *per se* as proof of the value of earning capacity. *Muench v. Heinemann* (1903), 119 Wis. 441, 96 N. W. 800; *Lehman v. Amsterdam Coffee Co.* (1911), 146 Wis. 213, 131 N. W. 362; *Heer v. Warren-Scharf A. P. Co.* (1903), 118 Wis. 57, 94 N. W. 789; 22 Am. Jur. 2d, *Damages,* p. 248, sec. 175.

The general rule relating to damages for loss of earning capacity for one who is his own employer appears in Restatement, 4 *Torts,* p. 634, sec. 924:

"Where the injured person was not receiving a salary but owned and was operating a business which was deprived of his services by the injury, his damages are the value of his services in the business during such period. If his services, rather than the capital invested or the services of others, were the predominant factor in producing the profits, evidence of the diminution of profits from the business will be received as bearing on his loss of earning capacity . . . . If, however, the income of the business is chiefly the result of capital invested or the services of others, the damages are determined by the market value of the services which the plaintiff was prevented from giving, that is, the amount commonly paid for such services in businesses of like nature. In such cases, evidence as to the extent of the business and the nature of his services is admissible, but not evidence as to the amount of profits before and after the loss."

This same general rule has long been accepted in this jurisdiction. In *Muench, supra,* page 446, this court adopted the rule which remains in effect:

". . . where a man not working on a salary, but managing an established business, which is mainly dependent on his personal exertions, has been disabled, and sues to recover damages for the injury, it is competent to show

the character and magnitude of the business, and to that end to show the capital and assistance employed in the business, also the quality and amount of the plaintiff's services in the business before the accident, and the amount of the profits of the business, not for the reason that such profits are in any respect elements of damage . . . but for the reason that all these elements, when known, are truly descriptive of the quality of the service of which the plaintiff was capable before his injury, and thus tend to throw light on his earning capacity. Of course, all of the elements above named are essential, and, in the orderly trial of a case, the proof of the amount of profits should not be made until the other necessary elements are shown."

In *Heer, supra,* this court pointed out that the net profits of a business, involving significant amounts of capital or the labor of others or other items than the personal services of the owner, are not a safe or correct measure of the loss to the plaintiff because he is unable to render services in the business.

These principles of law make it clear that the summary of the profit and losses of the logging business were admissible only to the extent that a foundation is laid to show a clear, causal connection between the diminution of profits and the lost earning capacity.

Although the record is replete with evidence that Featherly's injury diminished the profits from the business, the record leaves to speculation the extent to which these profits were proportionally or directly affected by the loss of Featherly's earning capacity.

There was extensive evidence in respect to the size and the character of the business. There was some evidence to show what Featherly might have earned had he been working for someone else as a logger or sawyer. There is also evidence, however, that Featherly's partnership had substantially increased its land holdings during the years from 1969 to 1973 and evidence that the value of the timber fluctuated considerably during that period.

There was evidence that costs of labor and materials fluctuated and that the business-debt situation varied. There is evidence to show that, during the period of the summary following the injury, Featherly had been more involved in the brokerage business than in contract logging.

The amount of money invested also varied widely. During the years from 1969 to 1973, the amount invested, for stumpage alone, was $9,896, $22,438, $48,704, $31,023, and $76,086. Depreciation on machinery during the same period ranged from $18,000 to more than $21,000 per annum. These figures clearly show that the investment of capital played a considerable role in the profit picture of the business.

There is also evidence from the same exhibit to show that the cost of labor ranged from $96,000 in 1969 to $184,000 in 1973.

Featherly also testified that at times his own crew consisted of 15 men or more.

Exhibit 165 demonstrates not that the profits fluctuated solely in respect to Featherly's ability to perform, but rather it demonstrates that the profits picture was, to a considerable degree, a reflection of the capital structure, investment in machinery, and the labor of others.

Although the exhibit indicates a considerable capital investment, it cannot be determined from that document how much capital was employed or the relation of invested capital to profits. Nor can it be determined what percentage of the profit is attributable to commissions, the success or lack of it in brokerage, or the labor of others.

There is also evidence to show that profits of the lumbering business varied widely as the result of the market price of lumber and, hence, would not necessarily have a relationship to Featherly's personal efforts.

Featherly failed to show the value of his own efforts as they contributed to the profits. Although there was evidence of the market value of Featherly's work as a logger and a sawyer, there was no evidence of Featherly's earning capacity as a businessman in the selection of lumber, its purchase and sale, or the administration of the business.

The only evidence indicating a connection between Featherly's capacity to perform work and the profits of the company came from Featherly's own testimony. He testified that a "good percentage" of the business profits was related to what he could do for the business personally and that the business depended on him.

As we view this record, therefore, Featherly failed to prove what is required by Wisconsin law—the quality and value of his services as they affected the profits of the business. He failed to prove the value of his services. The figures that we derive from the evidence adduced at trial merely indicate that his services were valuable to the company, but so were the services of others and so was the capital investment.

The jury was left to speculate in respect to the value of the plaintiff's earning capacity. This it cannot be permitted to do. *State ex rel. Sheldon v. Dahl* (1917), 165 Wis. 272, 162 N. W. 186. While we cannot say that the tabulation of profits was not relevant or probative, they were not in themselves sufficient to show the loss of earning capacity; and the additional evidence was not sufficient to make it possible for the jury to distinguish the portion of the business income attributable to the plaintiff's personal capacity from that portion of the income attributable to capital investment and the labor of others. *See:* 16 Am. Jur., *Proof of Facts,* pp. 794, 808, sec. 29, for a general discussion.

Under the circumstances, and without substantially more evidence in explanation of Exhibit 165, which was

objected to by the defendants, the admission of the exhibit prejudiced the defendants. The jury, in light of this exhibit, was permitted to determine the plaintiff's loss of earning capacity on the basis of the loss of profits for the tabulated years.

Nevertheless, it is clear from the record that Featherly sustained an injury which affected his earning capacity and should have the opportunity of attempting to show the value of his lost earning capacity and, if he can, to show to a reasonable degree the relationship between the value of his services and the profit picture of his business. We do not, by reversing this award, intimate that the sum which the jury reached by speculation was excessive. The entire record is indicative of the fact that the loss of earning capacity could only be compensated by an award of substantial damages. This award cannot, however, be sustained; and the cause is remanded for a new trial on the question of the plaintiff's loss of earning capacity. The plaintiff should be given an opportunity to show the value of his services in the business. The plaintiff, if he wishes to introduce evidence of profits, may do so only to the extent that a sufficient foundation is laid to show the relationship of the personal efforts to the profits of the enterprise.

We find no other prejudicial errors that affected the outcome of the trial. While the defendants object to the introduction of certain tax returns and the compilation embodied in Exhibit 165, because they were not produced within the time set by the trial court, we find no prejudice resulting from the tardy compliance with the pretrial order. Nothing in the record shows that the defendants did not have an opportunity to study these records prior to trial. Indeed, defendants made extensive and intelligent use of them during the course of cross-examination, to the extent that the record convinces us that the exhibit was not sufficient to show a loss of earning capacity.

While it was within the discretion of the trial judge to exclude these records in their entirety, because of lack of compliance with his order, he exercised his discretion in permitting their admission, and the defendants were not prejudiced by his so doing. *Fischer v. Fischer* (1966), 31 Wis. 2d 293, 306, 142 N. W. 2d 857.

In respect to the negligence aspects of the case, the defendants argue that prejudicial comments were made by the trial judge which undermined the probative value of their reconstruction expert. While the trial judge indeed gratuitously interjected a remark which might have had that effect, he hastened to add that the question he raised was a matter for the jury and not for the judge. In context, we conclude that the remark was not prejudicial; and, to the extent that it was, it was promptly rectified by the statement of the trial judge.

The defendants also alleged that the trial judge erred when it failed to give the absent witness instruction when the plaintiff did not call his own reconstruction expert, who had been sitting in the courtroom during much of the trial. The request for the absent witness instruction was properly denied. There must be a showing, before the absent-witness instruction is appropriate, that there is a reasonable relationship between the failure to produce the witness and the inference that the testimony, had it been placed before the jury, would have been unfavorable to the party's cause. *Shaw v. Wuttke* (1965), 28 Wis. 2d 448, 459, 137 N. W. 2d 649. We said in *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 615, 148 N. W. 2d 65, that the instruction is appropriate and should be used only in those cases where the failure to call a witness leads to a reasonable conclusion that the party who would ordinarily call that witness is unwilling to allow the jury to have the full truth. There is nothing here to show that such is the case. From our view of the

■■■■■■■■■■■■■■■■■

record, the testimony of the plaintiff's reconstruction expert was simply superfluous in light of other evidence.

It is also claimed that the trial judge abused his discretion when he excluded photographs taken of the scene of the accident. Whether photographs are to be admitted is a matter of judicial discretion. Here the trial judge stated that he excluded the photographs because they were taken during daylight hours and would mislead the jury, because they showed more than a driver would be able to see at night, the time when the accident occurred. He also concluded that the pictures distorted the accident scene with respect to the contours of the road and terrain and the distances involved. Undoubtedly, the photographs had some relevancy, but sec. 904.03, Stats., codifies the common law when it provides:

"904.03 **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

We need not agree that the trial judge correctly excluded these photographs, but the question is one of the trial judge's discretion. Clearly, he premised his decision on the not unreasonable conclusion that the photographs appeared to him to be misleading and could confuse the jury. He thus properly stated the reasons for his discretionary decision in a situation where the exercise of discretion was appropriate. We will not set aside a trial judge's ruling on evidence under such circumstances.

In the final summation to the jury, plaintiff's counsel made his statement to the jury which, it is contended, was a form of the prohibited "golden rule argument," for which a mistrial ought to have been granted. The prohibited "golden rule argument" has been explained in

*Rodriguez v. Slattery* (1972), 54 Wis. 2d 165, 170, 194 N. W. 2d 817, as:

". . . asking the individual juror to put himself in another's place and decide what he would want for a particular injury or damage to himself . . . it is frowned upon as inappropriate. . . it clearly is an improper argument to make to a jury."

In the instant case plaintiff's attorney stated:

"No offense to your fine city, but I think this is the last place in the world that Clyde Featherly wants to be for the last three weeks. He would much rather have his feet and not have gone through this experience than to have to sit here in Milwaukee.

". . . I am sure he would pay half a million dollars, if he had it, to get in the same condition he was in."

This argument is indeed perilously close to the "golden rule argument." However, as the record shows, it was but a single sentence in a lengthy argument, and the balance of the argument was devoted to legitimate questions for the jury's consideration. Even though we cannot approve of an argument of this nature, and it would have warranted prompt correction by the trial judge, there is no evidence that it had any effect on the damage award. In light of the length of the trial and the almost incidental interjection of this inappropriate statement in the course of a long argument, we cannot say that the defendants' cause was prejudiced thereby. In *Larson v. Hanson* (1932), 207 Wis. 485, 242 N. W. 184, great emphasis was placed by this court in finding a "golden rule argument" prejudicial because of the extremely high damages that were awarded. This, it concluded, was evidence of prejudice. We find no such evidence of prejudice herein. *See: Kellogg v. Village of Viola* (1975), 67 Wis. 2d 345, 354, 227 N. W. 2d 55.

We also conclude that the judge's approval of the $55,000 verdict for pain, suffering, and disability was

correct. In ruling on motions after verdict, the trial judge carefully set out all the evidence relating to pain, suffering, and disability and held that the award of $55,000 was sustainable. Where the trial court has approved a verdict, the test on appeal is whether the judge abused his discretion in concluding that the credible evidence supports the verdict. *Rodriguez v. Slattery, supra,* p. 173. Upon review of all the evidence, we conclude that the trial judge did not abuse his discretion in sustaining the award.

Nor can we concur in the view of the defendants that a new trial is required in the interests of justice. The test for granting a new trial on that ground is whether this court is convinced that there was a probable miscarriage of justice. We are not convinced on the basis of the record before us that even a totally and concededly error-free trial would probably reach a different result. There is no evidence that the interests of justice would be served by a retrial on any issue other than the issue of loss of earning capacity.

Under the circumstances of this case, where we do not order a retrial on the merits of the negligence action and where we find no error in that respect, the claimed error of the trial court in denying a motion for directed verdict on behalf of the defendant Ward is moot, and we do not address ourselves to the contention further.

*By the Court.*—That portion of the judgment awarding damages to the plaintiff for his loss of earning capacity is reversed, and the cause is remanded for a new trial on that issue only; in all other respects the judgment is affirmed.